**In re Terry J. MARTIN, Debtor.**

**Bankruptcy No. 96–43091–293.**

United States Bankruptcy Court,
E.D. Missouri,
Eastern Division.

July 23, 1998.

Terry J. Martin, Elilsberry, MO, Rex Burlison, O'Fallon, MO, for Debtor.

Howard Smotkin, St. Louis, MO, for Trustee.

E. Rebecca Case, St. Louis, MO, Chapter 7 Trustee.

Office of the United States Trustee, St. Louis, MO.

### MEMORANDUM OPINION

DAVID P. McDONALD, Bankruptcy Judge.

### JURISDICTION

This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, 157 and Local Rule 9.01 of the United States District Court for the Eastern District of Missouri. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(L), which the Court may hear and determine.

### PROCEDURAL BACKGROUND

1. Terry J. Martin, Debtor, filed a petition under Chapter 7 of the Bankruptcy Code (11 U.S.C. §§ 101–1330) on April 16, 1996.

2. Martin claimed as exempt, his interest in four life insurance policies issued by Prudential Insurance. Debtor valued his interests in the policies at: $1,407.11; $9,621.71; $3,434.63; and $1,673.42. Martin based his claim of exemption for each policy on Missouri Revised Statutes subsections 513.430(7) and 513.430(8) (hereinafter "subsection

513.430(7)" and "subsection 513.430(8)" respectively).[1]

3. Trustee, E. Rebecca Case, objected to Martin's claims of exemption in the four insurance policies. Trustee, first, argued that subsection 513.430(7) does not apply to the four policies because that subsection applies only to unmatured life insurance contracts and not to the dividends and cash surrender values one can accrue under such policies. Second, Trustee pointed out that the cash surrender value of the policies exceeds $21,000.00 and maintained that, to the extent Debtor relied upon subsection 513.430(8), the cash surrender value could be exempt only to that subsection's limit of $5,000.00.

4. Debtor filed a response to Trustee's Objection in which he admitted the cash surrender value of the policies exceeds $21,000.00 but argued that Trustee had erred in applying subsections 513.430(7) and 513.430(8). First, Debtor maintained that section 513.430(7) applies to his four policies because they are unmatured life insurance contracts. Further, Debtor argued that subsection 513.430(7) also applies to the cash surrender value of the unmatured life insurance policies he claimed as exempt because that section does not, by its terms, exclude its application to the cash surrender value of unmatured life insurance contracts.

Second, Debtor contended that the $5,000.00 limit in subsection 513.430(8) does not apply to cash surrender values because that subsection refers only to the interest, accrued dividends, and loan values of policies.

Also, Debtor argued that if the cash surrender value is exempt only to the extent of $5,000.00, then he will be required to surrender his insurance to access the non-exempt cash surrender value. Such a surrender, Debtor maintained, is inconsistent with subsection 513.430(7) which seeks to preserve a debtor's insurance. Alternatively, Debtor argued that he could access the cash surrender values of his policies by taking loans against them, but that such action would decrease the payment to the policies' beneficiaries upon his death and, therefore, contravene subsection 513.430(7)'s goal of preserving a debtor's insurance.

Third, Debtor maintained that the policy attributes in subsection 513.430(8), namely, the interest, dividends, and cash value of additional paid up insurance associated with an insurance policy are distinguishable from other attributes of an insurance policy in that they do not affect the amount of money "otherwise destined to be enjoyed by the policy's beneficiary." Debtor contrasts a policy's cash surrender value with the interest, dividends, and cash value of additional paid up insurance associated with it in that any cash surrender value accessed decreases the amount payable to the policy's beneficiary.

Fourth, Debtor argued that, even if the Court finds that subsection 513.430(7) does not apply to the cash surrender values he seeks to exempt and that subsection 513.430(8)'s $5,000.00 limit applies, the cash surrender values of his policies are exempt because they do not aggregate $5,000.00. To

---

1. Section 513.430 of Missouri Revised Statutes provides:

> The following property shall be exempt from attachment and execution to the extent of any person's interest therein:

> .    .    .    .    .

> (7) Any one or more unmatured life insurance contracts owned by such person, other than a credit life insurance contract;
> (8) The amount of any accrued dividend or interest under, or loan value of, any one or more unmatured life insurance contracts owned by such person under which the insured is such person or an individual of whom such person is a dependent; provided, however, that if proceedings under Title 11 of the United States Code are commenced by or against such person, the amount exempt in

such proceedings shall not exceed in value five thousand dollars in the aggregate less any amount of property of such person transferred by the life insurance company or fraternal benefit society to itself in good faith if such transfer is to pay a premium or carry out a nonforfeiture insurance option and is required to be so transferred automatically under a life insurance contract with such company or society that was entered into before commencement of such proceedings. No amount of any accrued dividend or interest under, or loan value of, any such life insurance contracts shall be exempt from any claim for child support. Notwithstanding anything to the contrary, no such amount shall be exempt in proceedings under any such insurance contract which was purchased by such person within six months prior to the commencement of such proceedings.

conclude that the cash surrender value of his policies aggregates less than $5,000.00 Debtor argues that the Court must deduct from each policy's value the loans and interest outstanding against that policy. Such calculations, Debtor maintains, result in a value of $3,347.68 which is less than the $5,000.00 limit found in subsection 530.413(8) and, therefore, Debtor's entire interest in the four policies is exempt.

5. The Court held a hearing on August 12, 1996 at which the parties clarified their positions. Trustee's attorney distinguished between the loan value and the cash surrender value of the policies in which Debtor claimed an exemption. Trustee's attorney explained that if Trustee accesses the loan value of the policies, Debtor will still have insurance in effect, but that if Trustee accesses the cash surrender value of the policies, Debtor will have to surrender his policies and will not have any insurance in effect. The Trustee's attorney explained that his client seeks to access the loan value of Debtor's policies, not their cash surrender value.

█ Trustee then argued that subsections 513.430(7) and 513.430(8) parallel the language used in the Bankruptcy Code's list of federal exemptions (11 U.S.C. § 522) and that the Court should, therefore, look to the comments to section 522 for guidance in interpreting the Missouri statute.[2] The comments to section 522 state that subsection 522(7), which mirrors subsection 513.430(7), exempts a life insurance contract but does not exempt other rights associated with the contract such as the right to borrow the contract's loan value. The comments further state that subsection 522(8), which resembles subsection 513.430(8), exempts $5,000.00 of loan value in a life insurance policy owned by the debtor and that, after the debtor selects the policies to which he will apply his exemption, the trustee may collect the entire remaining loan value of every life insurance policy owned by the debtor.

Trustee also argued that reading subsections 513.430(7) and 513.430(8) together supports the idea that a trustee may access the loan value of a debtor's life insurance policies because in accessing such value, the purpose of subsection 513.430(7), namely preserving debtor's insurance, is effected and the access to the loan value, mentioned in subsection 513.430(8) is granted (after taking into account the limited exemption provided for loan values provided in that section).

Debtor conceded that any dividends he had accumulated under the policies were "fair game" pursuant to Missouri Revised Statutes subsection 513.430(8) but argued that borrowing against the policies to access the loan values will decrease the death benefit associated with the policies when he filed bankruptcy and, therefore, violates subsection 513.430(7).

6. Upon the Court's request, the parties submitted letter briefs to the Court addressing the application of Missouri Revised Statues, section 377.330 to the life insurance policies which Debtor claimed as exempt.[3]

7. In his letter brief, Debtor's attorney argued that section 377.330 protects insurance policy benefits from the claims asserted by a beneficiary's or holder's creditors, so long as the benefits remain unpaid. Counsel for Debtor maintained that allowing Trustee to liquidate the insurance policies to access their cash surrender value would contravene Missouri's public policy of protecting unpaid insurance policy benefits from creditor claims.

8. Trustee's counsel argued, in his letter brief, that section 377.330 "does not affect the Trustee's right to the loan value of the life insurance policies to the extent the loan

---

**2.** Missouri has "opted out" of the federal exemption scheme. *See* Mo.Rev.Stat. § 513.427 (1994). *See also In re Lee*, 179 B.R. 643, 644 (Bankr. E.D.Mo.1995) (Missouri legislature did not have to re-opt-out of federal exemption scheme following 1994 amendment of Bankruptcy Code).

**3.** Entitled "Proceeds Not Liable for Debts," Missouri Revised Statutes section 377.330 provides:

> The money or other benefit, charity, relief, or aid to be paid, provided or rendered by any corporation authorized to do business under sections 377.200 to 377.460, shall not be liable to attachment or other process, and shall not be seized, taken, appropriated or applied by any legal or equitable process, nor by operation of law, to pay any debt or liability of a policy or certificate holder, or of any beneficiary named in a policy or certificate.

value exceeds the $5,000.00 limit established under the Missouri Revised Statute 513.430(8)." Trustee maintained that, because the loan value is a right under the policy that has ripened, matured, and become fixed, section 377.330(7) does not protect it from creditors' claims.

Further, Trustee argued that section 377.330 must be reconciled with subsection 513.430(8). The language in subsection 513.430(8) that caps the protection afforded to policy benefits at $5,000.00 when a debtor files for bankruptcy, the Trustee maintained, expresses a legislative intent to allow creditors to access dividends, interest, and loan values to be paid under unmatured life insurance policies in excess of $5,000.00 and creates an exception to section 377.330's general rule.

Alternatively, Trustee argued that the question of whether section 377.330 exempts Debtor's insurance benefits from his creditors' claims is not properly before the Court because Debtor did not specify section 377.330 as a basis for his claim of exemption.

### FACTUAL BACKGROUND

From the testimony presented and exhibits offered at the August 12,1996 hearing and the record as a whole, the Court makes the following findings;

1. Many years before he filed his bankruptcy, Debtor took out the four insurance contracts in which he claims exemptions. Trustee concedes that Debtor did not take out the four policies to either thwart his creditors' collection efforts or to protect his assets.

2. Carson Coyle, a licenced insurance agent with Prudential Insurance and, in fact, Debtor's insurance agent, testified at the August 12 hearing that when a dividend is declared on a life insurance policy a policyholder has four options. First, a policyholder may receive the dividend in cash. Second, a policyholder may receive the dividend and use it to purchase a new policy. Third, a policyholder may accumulate the dividend as interest on the policy. Fourth, a policyholder may direct the dividend into "paid-up additions" to the insurance policy. Mr. Coyle compared the option of purchasing paid-up additions with the option of receiving the dividend and purchasing a new policy with the dividend. Both options, Coyle concluded, result in the policyholder increasing the amount of insurance he has, but they differ in that buying "paid-up additions" does not require the policyholder to re-qualify for the policy.

3. Coyle explained that to determine the amount a policy's beneficiary will receive upon the death of the insured, when the insured has opted to purchase additional paid-up insurance with his dividends, one must add the face (or contract) value of the policy to the amount of additional paid-up insurance and then deduct the value of any loans the insured has taken against the policy.

4. Coyle also explained that to determine the amount a policy's beneficiary will receive upon the death of the when the insured has opted to accumulate his dividends, one must add the face (or contract) value of the policy to the cash value assigned to the accumulated dividends and then deduct the value of any loans the insured has taken against the policy. Coyle distinguished "accumulated dividends" from "additional paid-up insurance," saying that additional paid-up insurance increases the death benefit, but accumulated dividends represent cash payable under the insurance contract in addition to the death benefit.

5. The oldest insurance contract Debtor owned, purchased in 1957, has a face value of $5,000.00. The beneficiary of this policy is Debtor's wife. Under this contract, Debtor possessed paid-up additional insurance of $8,860.00 and had borrowed and not yet repaid $1,471.49 against the policy.[4] Coyle explained that upon Debtor's death, his beneficiary would be paid a death benefit of $12,452.89 ($5,000.00 + $8,860.00 – $1,407.11). The cash surrender value of this policy is $5,341.85 and its loan value is $5,236.02 (gross cash value plus cash value of paid-up additional insurance).

---

4. The Court bases its policy values on the exhibits submitted at trial which were the values owed and owing under Debtor's insurance contracts as of May 22, 1996.

6. The Debtor's second-oldest insurance contract, purchased in 1971, has a face value of $10,000.00. The beneficiary of this policy is Debtor's wife. Under this contract, Debtor has accumulated $722.31 of dividends. Debtor has also failed to repay a loan balance of $2,231.40 against this policy. The remaining loan value under this policy is $1,859.97 and this policy has a surrender value of $2,112.38.

7. The Debtor's third-oldest insurance contract, purchased in 1972, has a face value of $10,000.00. The beneficiary of this policy is Debtor's wife. Under this contract, Debtor has accumulated dividends and interest totaling $2,169.86; he has borrowed and not repaid $1,969.15 against this policy. This policy's remaining loan value is $3,498.36 and its surrender value is $3,755.71.

8. The Debtor's newest insurance contract, a back-loaded whole life insurance policy purchased in 1984, has a face value $50,000.00. The beneficiary of this policy is Debtor's wife. Under this contract, Debtor has accumulated paid-up additional insurance of $4,277.67. Debtor does not owe a loan balance against this policy. Coyle explained that upon Debtor's death, his beneficiary would be paid a death benefit of $54,722.67 ($50,000.00 + $4,722.67). The cash surrender value of this policy is $10,137.43 and its loan value is $10,115.61.

## DISCUSSION

Resolution of this case requires the Court to interpret and apply Missouri's exemption statutes to Debtor's interest in the loan values of his life insurance policies. Unfortunately, the Court has found little authority that either applies or interprets subsections 513.430(7) and (8), or reconciles those subsections with section 377.330.

Both parties have directed the Court to *In re Pettigrew*, 115 B.R. 214 (Bankr.E.D.Mo. 1990) (J. Barta). The *Pettigrew* case involved a husband and wife who filed a joint bankruptcy petition under Chapter 7 of the Bankruptcy Code. 115 B.R. at 215. Within 180 days of the filing, the husband/debtor died and the wife/debtor received $31,000.00 of proceeds from the husband's life insurance policy. *Id.* The wife/debtor claimed an exemption in the insurance proceeds. *Id.* The *Pettigrew* court rejected wife/debtor's claims of exemption because section 377.330 and subsection 513.430(8) apply only to unmatured interests in life insurance contracts. *Id.*

Trustee maintains that the loan values of Debtor's policies, like the proceeds in *Pettigrew*, are matured obligations beyond the protection of section 377.330 and subsection 513.430(8). Contrarily, Debtor reads *Pettigrew* as a case that "recognizes the 'protective immunity' of insurance policy benefits, including cash surrender value, where such benefits are 'to be paid.'"

A case similar to *Pettigrew* was decided by the bankruptcy Court for the Western District of Missouri. *In re Williams*, 82 B.R. 518 (Bankr.W.D.Mo.1988). Mr. and Mrs. Williams filed a joint petition under Chapter 13 of the Bankruptcy Code in 1985. *Id.* at 519. Before the confirmed Chapter 13 plan was completed, Mr. Williams died and Mrs. Williams moved to convert the case to one under Chapter 7. *Id.* The case was converted and Mrs. Williams claimed that section 377.330 and section 513.430(8) exempted, from the claims of her creditors, certain life insurance proceeds she had received from policies insuring her husband's life. *Id.* The bankruptcy court denied Mrs. Williams's claims of exemption, finding that section 377.330 and subsection 513.430(8) which apply to unmatured insurance policies did not apply because "[when] debtor ... converted to Chapter 7, her husband was already dead, the insurance policies had matured, and her rights as a beneficiary were vested and fixed." *Id.*

In support of his interpretation of section 377.330, Debtor refers the Court to *Reinecke v. Commissioner of Internal Revenue*, 220 F.2d 406 (8th Cir.1955). The *Reinecke* court considered the propriety of the Internal Revenue Service's ("IRS") efforts to collect taxes Mr. Reinecke owed from an insurance annuity contract he had transferred to his wife. *Id.* Specifically, Mr. Reinecke owed income taxes for the 1945, 1946, and 1947 tax years. *Id.* at 407. During those tax years Mr. Reinecke was single but in 1948 he married Mrs. Reinecke. *Id.* Approximately two years af-

ter marrying his wife, Mr. Reinecke transferred to her an insurance annuity contract that would mature in 1952. *Id.* When he transferred the annuity contract to his wife the cash surrender value of the policy exceeded Mr. Reinecke's outstanding tax liabilities. *Id.* After unsuccessfully attempting to collect the outstanding tax liabilities from Mr. Reinecke, the IRS sought to collect them from Mrs. Reinecke because she was the transferee of the insurance annuity contract. *Id.* Mrs. Reinecke challenged the IRS's ability to collect the taxes Mr. Reinecke owed from the annuity contract. *Id.* While the case between Mrs. Reinecke and the IRS was pending, the annuity became payable and the IRS took possession of the portion of the lump sum payment necessary to satisfy Mr. Reinecke's tax obligations. *Id.* The Tax Court concluded that the transfer of the insurance annuity contract was fraudulent after finding that Mr. Reinecke transferred the contract to Mrs. Reinecke in 1950, when he was insolvent and intending to hinder his creditors. *Id.* at 407–08. The Tax Court held that Mrs. Reinecke, as the recipient of a fraudulent transfer, was liable to the IRS for the taxes Mr. Reinecke owed. *Id.* at 408. Mrs. Reinecke appealed the Tax Court's decision, arguing that the Tax Court had erred in finding that Mr. Reinecke transferred the insurance annuity contract to her in 1950 because, in fact, he had transferred it to her in 1948 as part of an antenuptial agreement. *Id.* at 407–08. The Eighth Circuit held that:

> there was ample and proper basis for the Tax Court to find that legal transfer or assignment of the contract to petitioner was first made in May or June, 1950; that such transfer was without consideration; that there was, on the testimony adduced and the circumstances shown, "no credible or convincing evidence of any prior promise to assign the annuity to petitioner;" that at the time the transfer to petitioner was made Reinecke's object in making the assignment and the result of what he so did had been to hinder, delay and defraud the Government's collection of his income-tax deficiencies.

*Id.* at 411.

Mrs. Reinecke also argued on appeal that, even if the transfer had occurred in 1950, her interest in the annuity contract was exempt under section 377.330 of Missouri's Revised Statutes.[5] *Id.* The Eighth Circuit explained section 377.330 as follows:

> [t]his statute, as we read its language and the expressions of the Missouri courts relating to it, simply creates a protective immunity, from seizure by attachment or appropriation through legal or equitable process, for whatever benefits may be provided for by such a policy in favor of the holder or beneficiary thereof, as against the claims of any creditor of either, so long as such benefits constitute merely something "to be paid," or in other words represent only a matter of unripened or unmatured or unfixed policy obligation, under the terms of the contract. Stated differently its object would appear to be primarily to deprive creditors, as a matter of state policy and interest in preserving life insurance in force in the State, of the power to destroy the existence or effect the cancellation of any "old line" or reserve-plan life insurance policies, through attempts to reach the premiums paid, the cash surrender value thereof, or such benefits as have been provided for therein, so long as the obligation of the insurer to pay these benefits-whatever their nature may behas not ripened or matured or become fixed in accordance with the terms of the contract.

*Id.* at 410.

The *Reinecke* court considered the Missouri Supreme Court's decision in *Kansas City v. Halvorson,* 352 Mo. 1027, 180 S.W.2d 710 (1944) (en banc), noting that in interpreting section 377.330, Missouri's high court placed great emphasis on the phrase "to be paid." 220 F.2d at 411. The *Reinecke* court summarized Missouri law under section 377.330 thus: "no matter how much old-line or reserve plan insurance an insolvent debtor may be carrying; no matter who the beneficiaries thereof may be; no matter what amount of premiums is being paid thereon; and no matter how large an accumulative surrender value the policies may have the benefits of whatever nature which can be

---

5.  The version of section 377.330 then in effect    was the same as the version in effect today.

made to or will become payable thereunder are immune from the reach of any creditors, either of the holder or the beneficiaries, until the obligation of the insurer to make payment of such benefits has ripened, or matured, or become fixed, in accordance with the term of the policy." *Id.* at 412. This immunity, the appeals court reasoned, was a manifestation of Missouri's policy "to preserve life insurance in force in the State as a matter of public interest and general welfare." *Id.* at 414.

The Eighth Circuit, however, ultimately rejected Mrs. Reinecke's claim of exemption on the ground that the amount owed to her under the life insurance annuity contract to which she sought to apply section 377.330 was not an unmatured obligation, having become payable by the annuity's terms in 1952.

■ Debtor's reliance on *Reinecke* is misplaced. Debtor focuses on the *Reinecke* court's use of the language "to be paid" to describe the benefits protected by section 377.330 but fails to consider the court's further description of protected benefits as those which are "unripened, or unmatured or unfixed." The *Reinecke* court touched on this difference when it explained that it did not interpret Missouri law to allow a debtor to "thwart such right as creditors otherwise may have to obtain satisfaction out of the matured benefits of a policy by sitting back and refusing to send in a terminated policy in order to escape having the proceeds so used." 220 F.2d at 413. The Court agrees with the Trustee that the right to access the loan value of the policies is a ripened or matured right Debtor has under the insurance policies and, extending the reasoning of the *Reinecke* court, Debtor should not be permitted to deprive his creditors of the loan value of his policies by refusing to utilize his matured right to access that value.

The Court also finds that the more specific statute, here subsection 513.430(8), prevails over the more general statute, here section 377.330. Subsection 513.430(8) explicitly contemplates that creditors will access the loan values of the unmatured insurance policies owned by a debtor in bankruptcy and exempts those loan values only to the extent of $5,000.00 in the aggregate.

Having concluded that Trustee may access the loan values of Debtor's insurance policies for the benefit of Debtor's creditors, the Court will consider the manner in which the limited $5,000.00 exemption provided by subsection 513.430(8) is to be calculated. Subsection 513.430(8) exempts from the claims of a debtor's creditors only $5,000.00 of dividends, interest, and loan value owed under an unmatured life insurance contract. In arguing that the dividends, interest, and loan values of his policies do not exceed $5,000.00, Debtor has subtracted from the dividends, interest, or loan value of each policy, the outstanding loan balance related to that policy. In some cases, the loan balance drawn against a policy exceeds the dividends, interest, or loan value of the policy and Debtor has subtracted these deficits from the loan values, dividends, and interest associated with his other policies. Debtor's argument that the Court, in applying subsection 513.430(8)'s limit must deduct from the policy loan values, the value of outstanding loans and interest he has drawn against each policy is true if one defines the loan value of the policy as the total amount of loans that can be drawn against each policy. The Court, however, has used the term loan value to describe the amount that may be drawn against each of Debtor's policies after considering the loans he has already taken against them, in other words, the policy's remaining loan value. Because the loan values cited by the Court are net of the loans Debtor has drawn on his policies, there is no reason to deduct the amount of Debtor's outstanding loans a second time from the loan values.[6] As of May 22, 1996, Debtor's insurance policies had an aggregate loan value of $20,-

---

6. As the Court has noted, Debtor conceded that the dividends he has accumulated under the policies are "fair game." This, however, is not exactly correct. Missouri Revised Statutes section 513.430(8), discussed above, exempts accumulated dividends from the creditors of the insured to the extent of $5,000.00 when the insured is a debtor in bankruptcy. Debtor has accumulated dividends and interest of $2,892.17 under his second-oldest and third-oldest policies. Again, the Court bases the policy values on the exhibits submitted at trial which were the values owed and owing under Debtor's insurance contracts as of May, 22, 1996.

709.96 and total accumulated dividends of $2,892.17. Subsection 513.430(8) exempts from the claims of Debtor's creditors only $5,000.00 of the more than $23,000.00 of dividend and loan value associated with Debtor's life insurance contracts.[7]

---

7. The Court notes that the Trustee is only entitled to the loan values, dividends, and interest associated with Debtor's insurance contracts as of April 16, 1996, the date of filing of this bankruptcy. Presumably, the loan values, dividends and interest associated with Debtor's life insurance contracts as of April 16, 1996 will be slightly less than the corresponding amounts associated with those policies on May 22, 1996 which were set forth in the exhibits submitted at trial.