**In re Roy U. DIXON, Debtor.**

**Bankruptcy No. 92–10338 K.**

United States Bankruptcy Court,
W.D. New York.

May 4, 1992.

Raymond C. Stilwell, Relin and Goldstein, Rochester, N.Y., for Citibank (New York State).

Paul M. Pochepan and Jeffrey Freedman, Buffalo, N.Y., for Roy U. Dixon, debtor.

MICHAEL J. KAPLAN, Bankruptcy Judge.

An unsecured creditor (Citibank (NYS)) has objected to confirmation of the debtor's Chapter 13 plan on the grounds that the plan does not propose to pay creditors at least what they would receive in a Chapter 7 liquidation. (11 U.S.C. § 1325(a)(4).)

The narrow issue presented for resolution is whether the debtor, in computing the amount that unsecured creditors would receive in a Chapter 7 liquidation of his interest in the house he owns together with his non-debtor spouse, is entitled to deduct $22,040 from the estimated equity as hypothetical costs of a Chapter 7 sale, $12,040 of which is the estimated liability of the estate for capital gains taxes.

Specifically, the debtor postulates that the house would bring $100,000; that mortgages of $62,897 would be paid at closing; that the capital gains tax, broker's commissions, trustee's commissions and other costs of administration would be paid; and that the net equity of $15,063 would then be divided by 2 to represent his 50% interest in the home. Finally, after application of his $10,000 homestead exemption, the net non-exempt equity available to unsecured creditors in a Chapter 7 case would be zero. Thus, he argues that the 6% he proposes to pay to unsecured claims more than meets the Chapter 7 test.[1]

Citibank (NYS) raises three arguments. Firstly, it argues that the debtor should not be entitled to credit for hypothetical costs

of liquidation that might never be incurred—in other words, to allow a 10% credit for costs of sale smacks of a "blanket assertion" of a percentage reduction of value, of the type rejected by another court in *In re Barth,* 83 B.R. 204 (Bankr.Conn. 1988).

Secondly, it argues that binding caselaw in this District (*Household Finance v. Wilk,* No. Civ. 91–0655 L, 1992 WL 165770 (W.D.N.Y. Feb. 13, 1992) (Larimer, J.)) and elsewhere which precludes consideration of hypothetical costs of sale in valuing property for purposes of lien avoidance under 11 U.S.C. § 522(f)(1), should be applied to valuation of property for purposes of 11 U.S.C. § 1325(a)(4).

Lastly, it argues that because this debtor is more than 55 years of age (in fact, he is 73 and his wife is 69) and because he could elect (under 26 U.S.C. § 121) to exclude up to $125,000 of his aggregate capital gains in a sale of his residence, a Chapter 7 trustee could make this election for the debtor. Consequently, the Chapter 7 test must reflect the fact that the value of the capital gains tax would go to creditors and not to the Internal Revenue Service.

As to the scope of application of the decision of the District Court in *Wilk* and of the case of *Hunter Press v. Conn. Bank & Trust,* 420 F.Supp. 338 (D.C.Conn. 1976) (cited by counsel), suffice it to say that those cases are apt authority for looking only to market price, without deduction for costs of sale, when dealing with many of the provisions of the Bankruptcy Code which, like § 522(f), require the Court to determine the "value" of property. Here it is agreed that the value of the debtor's home is $100,000. The dispute does not involve the "value" of anything. What is at issue is the amount that creditors would ultimately receive if this home were sold for $100,000 in a Chapter 7 case concerning this debtor.[2]

---

1. In this district, Chapter 13 cases involving only one member of a married couple proceed on an "administrative convenience" rule that if the case were a Chapter 7 case, the Court would approve sale of the non-debtor's interest under 11 U.S.C. § 363(h) and would divide the proceeds equally between the estate and the non-debtor spouse under 11 U.S.C. § 363(j). The Court would set the rule of convenience aside

for a debtor or any creditor who wishes to undertake the task of contesting these matters.

2. The word "value" used in 11 U.S.C. § 1325(a)(4) refers (for purposes of the case) to the "present value" of the stream of payments promised by the debtor in his plan, and not to the market value of any asset.

Thus *Wilk* and similar cases are inapposite, and it is appropriate to rely upon the plain language of § 1325(a)(4) and cases clearly upholding a Chapter 13 debtor's entitlement to credit for certain liquidation expenses in applying § 1325(a)(4). These include such cases as *In re Rivera*, 116 B.R. 17 (Bankr.P.R.1990) ("[T]he debtor is entitled to deduct from any apparent equity, the costs of Chapter 7 liquidation including likely administration expenses, i.e. trustees, brokers, appraisers, auctioneers and attorneys.") (dictum); *In re Wilheim*, 29 B.R. 912 (Bankr.D.N.J.1983) (6% cost-of-sale expense approved for expenses "such as appraisal fees, trustee's fees and real estate or auctioneer's commissions normally incurred in a Chapter 7 liquidation proceeding.") (But debtor's requested 8% figure "exceeds the norm."); and *In re Card*, 114 B.R. 226 (Bankr.N.D.Cal.1990) ("In determining what the Chapter 7 dividend would be for purposes of applying the test of section 1325(a)(4), the expenses of a hypothetical Chapter 7 liquidation must be accounted for.")

Nor does the case of *In re Barth*, 83 B.R. 204 (Bankr.D.Conn.1988) limit the allowable expenses to trustee's commissions alone, as Citibank would have the Court hold. Rather, the *Barth* court acknowledged that the expenses of a hypothetical Chapter 7 liquidation must be accounted for; although the court rejected "blanket assertions that six percent, or any other percentage ... automatically should be allowed to establish liquidation cost," the court observed that even if trustee's commissions alone were allowed, then the plan was confirmable, and since the Court determined that those, at least, were creditable to the debtor, it confirmed the plan.

Among the thousands of Chapter 7 estates undergoing administration in this District at any time, hundreds contain residential real estate. The Chapter 7 trustees regularly list the property with a multiple-listing broker in the same way that a homeowner would. As pointed out in the debtor's brief, realtors in such cases are normally paid 7% commission, the attorney for the trustee is normally paid a fee that might approximate 1% of the sale price, the title search and survey map must be updated, a transfer tax of nearly 1% must be paid, and recording fees must be paid. I approve a 10% cost-of-sale figure not as a "blanket assertion," but as a fact, well-founded in the experience of this Court and its Chapter 7 trustees.

Citibank argues that "hypothetical" Chapter 7 liquidation costs become unduly "speculative" at creditors' expense, when the Court presumes (for § 1325(a)(4) purposes) that if this were a Chapter 7 case this real estate would not be sold privately, without broker's commission and at minimal other fees and costs. To presume a normal Chapter 7 case is far less "speculative" than to presume the scenario that the creditor posits. Moreover, the Chapter 7 test is not new. It used to be known as the "best interest of creditors test" and existed in former Chapter XIII of the 1898, as well as in former Chapter XI. That the courts applied "liquidation" value net of liquidation costs was presumably well-known to Congress at the time of passage of the 1978 Reform Act, and even though Congress was re-writing the test to make specific reference to Chapter 7, Congress adopted the words "the amount that would be paid on such claim if the estate were liquidated under Chapter 7." Congress could not possibly have rendered a clearer statement of its intent that the focus be upon a figure that is net of all normal administrative costs and expenses. (Contrast this with 11 U.S.C. § 363(j) wherein Congress expressly and surgically removed "any compensation of the trustee" from the costs and expenses chargeable against the proceeds of the sale of property before an allocation of the proceeds is made as between the estate and the co-owner. Congress there demonstrates its ability to exclude a particular cost of administration when it wishes.)

Finally, it is not necessary for me to decide whether a Chapter 7 Trustee has authority to exercise a debtor's election to exclude capital gain under 26 U.S.C. § 121. This case involves only Mr. Dixon. Mrs. Dixon is not a debtor in this Court. 26 U.S.C. § 121(c) is clear that Mrs. Dixon would have to join in an election by or on behalf of Mr. Dixon. The Court has not

been cited to any provision of Bankruptcy Law or Tax Law by which Mr. Dixon's trustee or this Court could compel Mrs. Dixon to join in the election or by which it could be exercised on her behalf in this proceeding.

The objections of Citibank (NYS) are overruled. This case is placed on the "Adjourned Confirmation" calendar of May 18, 1992, at noon.

SO ORDERED.