**In re Tracy SMITH, Debtor.**

**Tracy Smith, Plaintiff,**

**v.**

**Household Finance Realty Corporation of New York, Defendant.**

**Bankruptcy No. 00–85501–478.**
**Adversary No. 801–8084–478.**

United States Bankruptcy Court,
E.D. New York.

May 21, 2001.

Reno & Artura, by Richard F. Artura, Lindenhurst, NY, for Tracy Smith.

Rubin & Rothman, Islandia, NY, for Household Finance Realty Corp. of New York.

### MEMORANDUM DECISION DISMISSING COMPLAINT

DOROTHY EISENBERG, Bankruptcy Judge.

This matter is before the Court pursuant to an adversary proceeding filed by Tracy L. Smith (the "Debtor" or the "Plaintiff") against Household Finance Realty Corporation of New York (the "Defendant") seeking to avoid the Defendant's second mortgage lien pursuant to 11 U.S.C. §§ 506(a) and (d) under the theory that after deducting the first mortgage balance and certain other hypothetical costs, the Defendant's mortgage is entirely unsecured. The Defendant defaulted, having failed to file an answer or otherwise make an appearance at the hearing for the pretrial conference. The Court, having considered whether entry of judgment by default would be appropriate on the merits of Plaintiff's complaint, finds that the Plaintiff has failed to state a claim under which relief can be granted. Therefore, the adversary proceeding shall be dismissed. However, although this adversary proceeding is dismissed, the automatic stay has not been lifted, and the Defendant

may not take any action to foreclose on its mortgage until after the Debtor's Chapter 13 plan is successfully completed. The following constitutes the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

## BACKGROUND

On August 24, 2000, the Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code. On October 18, 2000, the Debtor filed a motion pursuant to 11 U.S.C. Section 522(f) seeking to avoid the Defendant's judgment lien on the grounds that it impaired the Debtor's $10,000 homestead exemption. The Defendant had obtained a judgment in the State Court based on its defaulted mortgage note. A hearing on the motion pursuant to Section 522(f) was held on November 21, 2000, and was unopposed. The motion was granted and on December 21, 2000, an order was entered voiding the *judicial lien* of the Defendant in full upon successful completion of the Debtor's Chapter 13 plan. However, the issue of whether the *mortgage lien* held by the Defendant remained as an obligation of the Debtor was left unresolved. In order to resolve this issue, the Debtor filed the instant adversary proceeding seeking to avoid the Defendant's mortgage lien entirely under Sections 506(a) and (d) of the Bankruptcy Code.

## FACTS

The Plaintiff filed a petition for relief pursuant to Chapter 13 of the Bankruptcy Code on August 24, 2000 (the "Petition Date"). As of the Petition Date, the Plaintiff owns the property located at 34 Garden Street, Farmingdale, New York (the "Property") as tenant in common with Frances Smith, the Plaintiff's mother. The Property was valued at $160,000 pursuant to an appraisal as of December 20,

1999 supplied by the Debtor. As of the Petition Date, the Property was encumbered by a first mortgage held by Interbay Funding, LLC, with a balance due from the Debtor and Frances Smith in the amount of $139,428. The Plaintiff's interest in the Property is also encumbered by a second mortgage held by Household Finance Realty Corporation of New York (the "Defendant"). Prepetition, the Defendant second mortgagee had obtained a judgment solely against the Debtor in the amount of $14,154.62, which was duly docketed on February 7, 2000.

On December 15, 2000, the Debtor's Chapter 13 plan was confirmed, and provided for payment to the Debtor's creditors over sixty months. The plan does not provide for any payment to the Defendant on its mortgage claim. On February 21, 2001, the Debtor filed a complaint against the Defendant pursuant to 11 U.S.C. §§ 506(a) and (d) seeking to avoid the Defendant's mortgage lien entirely, as the Debtor alleges that there is no equity remaining in the Property, after deduction of the first mortgage, the Debtor's homestead exemption, and certain other hypothetical costs, to which the mortgage lien can attach. According to the complaint, the Debtor alleges that the Property's adjusted value from an appraised value of $160,000 is $144,000, based on the Debtor's alleged right to subtract ten percent of the value of the Property for hypothetical closing costs. From the $144,000, the Debtor further deducted $10,000 for his homestead exemption, leaving the Property with an alleged value of $134,000. The first mortgagee is owed $139,428, which exceeds the "adjusted value" of the Property, and the Debtor seeks to have the second mortgage claim held by the Defendant against the Debtor's interest in the Property deemed unsecured and avoided pursuant to sections 506(a) and 506(d) of the Code. There is no representation that the

Debtor has any intent to sell the Property and it is not subject to any proposed contract of sale. In fact, Debtor has indicated his intent to retain the Property. The Defendant was served with a copy of the summons and complaint, and failed to file a timely answer or otherwise appear in this adversary proceeding.

At the pretrial conference held on March 29, 2001, the Debtor's counsel advanced the arguments set forth in the complaint, and advised the Court that the Debtor's ability to fund his Chapter 13 Plan was dependent upon relieving the Debtor of his obligations under the Defendant's mortgage. The Court agreed to hear the matter on default and make a determination whether to grant the requested relief on the merits of the complaint. Debtor's counsel made an additional argument at the pretrial hearing that under R.P.A.P.L. § 1301, as a result of obtaining the judgment against the Debtor, the Defendant "forfeited" its rights under the mortgage and could never commence a foreclosure action. Counsel expanded on this argument in a letter to the Court dated April 20, 2001.

### DISCUSSION

#### 1. Procedural Posture

■ The first set of issues to be resolved are procedural. In this adversary proceeding, the Defendant has failed to file a timely answer, and the Debtor has not filed a motion for default judgment. Nevertheless, the Court has been asked to rule on the merits of the Debtor's claims. Bankruptcy Rule 7055 makes applicable Fed.R.Civ.P. 55 to bankruptcy adversary proceedings, which states:

(a) Entry. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit

or otherwise, the clerk shall enter the party's default.

At the hearing for the pretrial conference, counsel for the Debtor verified that the Defendant was served with the summons and complaint on February 22, 2001, and failed to file a timely answer or otherwise respond in this adversary proceeding. In addition, the Defendant failed to appear at the pretrial hearing scheduled on March 29, 2001. The Court finds that the Defendant's conduct in this adversary proceeding qualifies as failure to plead or otherwise defend itself, and constitutes a default.

■ The next issue raised is whether entry of a judgment by default is appropriate. As stated in 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure:* Civil § 2688 (1998), the Court is to accept as true all of the factual allegations of the complaint. The Debtor is also entitled to all reasonable inferences from the evidence offered. *Au Bon Pain Corp. v. Artect, Inc.,* 653 F.2d 61 (2d Cir.1981). However, "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *supra* § 2688 at 280–81, 282.

#### 2. Avoidance of Mortgage Claim Under Sections 506(a) and (d).

An analysis of the facts as alleged by the Plaintiff to determine whether they constitute a legitimate cause of action in this adversary proceeding is appropriate. The Court begins with a review of Sections 506(a) and (d) of the Bankruptcy Code. Section 506(a) provides, in part, as follows:

An allowed claim of a creditor secured by a lien on property in which the estate

has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed distribution or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a)

■ Section 506(d) of the Bankruptcy Code provides that "[t]o the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void". When read together, these sections of the Bankruptcy Code serve to void liens which are undersecured.

With respect to mortgage liens in the context of a Chapter 13 case, another section of the Bankruptcy Code limits the applicability of these avoiding provisions. Section 1322(b)(2), which sets forth the parameters for confirming a Chapter 13 plan, provides that such plan may:

> (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

11 U.S.C. § 1322(b)(2).

When these two sections of the Code are read together, a conflict arises over whether a Chapter 13 debtor may employ the avoiding provisions contained in section 506 of the Code in the case of a claim secured solely by a mortgage lien on the debtor's principal residence. Section 1322(b)(2) of the Code works to protect the mortgagee from modification of the terms it agreed to when entering into the mortgage agreement.

■ The inherent conflict between these sections of the Bankruptcy Code was resolved by the Supreme Court in *Nobelman v. American Savings Bank (In re Nobelman)*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). In *Nobelman*, the Supreme Court held that the rights of a claim holder secured only by an interest in the debtor's principal residence were protected from modification by Section 1322(b)(2) of the Code, notwithstanding the provisions of the Code set forth in section 506. As a result, a Chapter 13 debtor cannot "strip down" a mortgage claim if it is partially secured by a lien solely on the debtor's residence because to do so would run afoul of the anti-modification provisions set forth in Section 1322(b)(2) of the Code.

Under the *Nobelman* decision, the mortgagee's rights as provided in the mortgage and under applicable state law are unaffected by the filing of a Chapter 13 petition by a debtor, so long as the claim of the mortgagee is at least partially secured. The rights that were bargained for between the parties are the rights protected from modification by Section 1322(b)(2) of the Bankruptcy Code. In the case before the Court, the Debtor is seeking to avoid the mortgage lien of the Defendant in full, using this adversary proceeding as a vehicle. However, if there is any equity remaining in the Property after deducting the first mortgage and any other appropriate charges, such as real property tax liens, the Defendant's mortgage claim cannot be disturbed. To avoid the mortgage lien in part or in full would contravene the *Nobelman* decision and its progeny.

■ In this case, the Property is worth $160,000, the value represented by the Debtor as of the approximate date of the filing of the Chapter 13 petition. The first

mortgage encumbers the entire Property in the amount of $139,428, leaving $20,572 in equity remaining. Although the Debtor urges the Court to deduct hypothetical closing costs for a non-contemplated sale in the amount of $16,000 from this amount, the Court finds this inappropriate. The Debtor relies on the case of *In re Dixon,* 79 B.R. 702 (Bankr.N.D.Ohio 1987) for support, which case holds that for the purposes of determining whether a Chapter 13 plan is confirmable, the debtor could deduct ten percent of the estimated sale price from estimated equity as hypothetical costs of a sale of the property under Chapter 7, when calculating the amount that unsecured creditors would receive in a Chapter 7 liquidation of the debtor's interest in his residence. However, *In re Dixon* unequivocally states that when dealing with provisions of the Bankruptcy Code which require the court to determine the "value" of property, hypothetical costs of sale are not to be deducted, and is inapplicable to these facts. 140 B.R. 945, 946.

Courts determining whether hypothetical closing costs can be deducted from the fair market value of the debtor's property under this scenario are divided, and there is no binding precedent to follow in the Second Circuit. The Court of Appeals for the Fourth Circuit has had occasion to rule on this issue, and has denied deduction of such costs of hypothetical sale based on its interpretation of Section 506 of the Bankruptcy Code. In *Coker v. Sovran Equity Mortgage (In re Coker),* 973 F.2d 258 (4th Cir.1992), the Court interpreted Section 506(a) of the Code in its entirety and reviewed relevant case law. As noted by the Court in *Coker,* the first sentence in § 506(a) focuses on "the extent of the value of the creditor's interest" in the property, which has led some courts to hold that hypothetical disposition costs should be deducted. *See In re Smith,* 92 B.R. 287, 290 (Bankr.S.D.Ohio 1988) (value of creditor's

interest in estate's interest in property is proper focal point); *In re Claeys,* 81 B.R. 985, 991–92 (Bankr.D.N.D.1987); and *In re Paige,* 13 B.R. 713, 714 (Bankr.S.D.Ohio 1981). These courts take the position that the court must determine what a creditor would receive from the collateral in question upon its customary means of disposition. The Fourth Circuit rejected this analysis in connection with an avoidance action under § 506(a) and (d) because the property in question is not actually being sold.

The alternate reading of section 506(a) embraced by the Fourth Circuit focuses on the language contained in the second sentence, "the purpose of the valuation and ... the proposed disposition or use of [the] property." *Coker,* 973 F.2d at 260 (citing *In re Usry,* 106 B.R. 759 (Bankr.M.D.Ga. 1989); and *In re 222 Liberty,* 105 B.R. 798, 804 (Bankr.E.D.Pa.1989)). In the case of *Coker* and others reaching the same result, the courts give meaning to the language of section 506(a) in whole, and recognize that the debtors in question are keeping the property at issue. To allow the debtors to keep the property while deducting hypothetical sale costs from the value is inappropriate given that the sale costs being deducted are truly "hypothetical":

> Chapter 13 is a reorganization mechanism for individuals. One of its advantages to the homeowner debtors is that they may retain their home by reaffirming the mortgage debt. Were we to permit the deduction of hypothetical sale costs in the face of the [debtors'] stated intention, an intention that is subject to the bankruptcy court's approval, we would create an anomalous situation indeed. On the one hand, the debtors have submitted their plan, which includes a pledge to continue their mortgage payments in full. If this pledge is carried out, the mortgagees will obtain

full value of their bargained-for security interests. On the other hand, the [debtors] want the court to value [the bank's] claim as if the very event that Chapter 13 permits them to avoid has occurred, i.e., a foreclosure. If the 'proposed use or disposition' provision is to have any meaning, the debtor should not be permitted to 'eat with the hounds and run with the hares.' *In re Crockett*, 3 B.R. 365, 367 (Bankr.N.D.Ill.1980).

*In re Coker*, 973 F.2d at 260.

Other courts have found additional support for declining to deduct hypothetical sales costs from valuation of the debtor's residence under section 506(a) of the Code in the applicable legislative history. As noted in H.R.Rep. No. 595, 95th Cong., 1st Sess. 356 (1977), U.S.Code Cong & Admin.News 1978, p. 6312, valuation of a secured lien holder's claim does not necessarily contemplate a forced sale of the property. *In re Dinsmore*, 141 B.R. 499, 510 (Bankr.W.D.Mich.1992). (Where debtor chooses to retain and use property, the applicable facts dictate that closing costs are not to be considered in valuation).

The Court agrees with the analysis set forth by the Fourth Circuit and other cases which make similar findings. The Debtor is not selling the Property and the closing costs are not actual expenses in this case. Therefore, it is inappropriate to deduct the hypothetical closing costs. In fact, even if the Court were to deduct the hypothetical closing costs from the fair market value of the Property after deducting the first mortgage, $4,572 would remain in equity. The Debtor's share of the equity remaining would amount to $2,786. As a result, there would be equity to which the Defendant's mortgage lien could attach and the rationale set forth in *Nobelman* would preclude entry of judgment in favor of the debtor.

■■■ The Debtor also seeks to deduct the Debtor's homestead exemption from the value of the Property for the purposes of this adversary proceeding. Property rights, and the rights of claimants in and to real property, are determined by state law. *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Under New York law, a debtor's homestead exemption does not have priority over a consensual lien such as the mortgage lien held by the Defendant. *See In re Giordano,* 177 B.R. 451, 455 (Bankr.E.D.N.Y. 1995) (Homestead exemption is judgment debtor's right to receive the first $10,000, after payment of consensual liens, of proceeds of sale of debtor's homestead conducted pursuant to the application of a money judgment lien creditor) (citing N.Y. Civ. Prac. L. & R. 5206(a) (McKinney 1994)). As the Defendant holds a consensual lien, the Defendant's mortgage lien is superior to the Debtor's homestead exemption claim. Based on the Court's calculations, there is equity to which the Defendant's second mortgage lien can attach, after payment of the first mortgage, and under the *Nobelman* decision, the relief requested in the Plaintiff's adversary proceeding cannot be granted.

### 3. Application of R.P.A.P.L. § 1301.

■■■ The final argument the Debtor requests that the Court consider is whether the Defendant's remaining rights under the mortgage are extinguished altogether under R.P.A.P.L. § 1301.[1] R.P.A.P.L. § 1301(1) provides as follows:

Where a final judgment for the plaintiff has been rendered in an action to recover any part of the mortgage debt, an

---

**1.** For an insightful discussion of Section 1301 of the R.P.A.P.L., *see* Kenneth M. Block and

Jeffrey B. Steiner, *Election of Remedies,* 225 N.Y.L.J., No. 94 at 1 (2001).

action shall not be commenced or maintained to foreclose the mortgage, unless an execution against the property of the defendant has been issued upon the judgment to the sheriff of the county where he resides within the state, or if he resides without the state, to the sheriff of the county where the judgment-roll is filed; and has been returned wholly or partly unsatisfied.

The Debtor argues that this provision only allows for a foreclosure after a money judgment has been obtained in limited circumstances, and that the Defendant's situation does not come within the special circumstances required to permit the Defendant to bring a foreclosure action. The Debtor cites to *Bank Leumi Trust Co. v. Sibthorp*, 135 A.D.2d 476, 522 N.Y.S.2d 568 (1st Dept.1987) and cases cited therein to support his argument. Under the Debtor's analysis, the Defendant's mortgage claim was entirely extinguished once the Defendant elected to pursue a judgment against the Debtor. *Bank Leumi Trust Co.* does hold that entry of a money judgment on a mortgagor's obligations precludes commencement of a foreclosure action on a mortgage securing obligations reduced to judgment. However, this case does not squarely address whether a mortgagee's rights under a mortgage are totally extinguished upon obtaining a money judgment.

The mortgagee's rights are more clearly explained in the case *Valley Savings Bank v. Rose*, 228 A.D.2d 666, 646 N.Y.S.2d 349 (2d Dep't 1996). In the *Valley Savings Bank* case, the plaintiff Valley Savings Bank held a $300,000 promissory note and mortgage on a parcel of property owned by the defendants as security for a line of credit utilized by a corporate entity owned by the defendants. In an action commenced in New Jersey, the plaintiff was awarded a money judgment in an amount in excess of $714,000, which included money which was the subject of the $300,000 note and mortgage. After entry of the judgment, the defendants filed a petition under Chapter 7 of the Bankruptcy Code in the Bankruptcy Court for the Southern District of New York. Approximately one month after the petition was filed, after taking no action to execute against the defendants' property upon the judgment, the plaintiff obtained vacatur of the automatic stay to permit the plaintiff to commence an action to foreclose upon the property. In the meantime, the defendants received their discharge in the Chapter 7 case, thereby voiding the plaintiff's prior judgment.

The plaintiff bank made a motion for summary judgment in the foreclosure action, and the Supreme Court found in favor of the defendants, holding that pursuant to R.P.A.P.L. § 1301(1), the final judgment in the New Jersey action "constituted an election of remedies precluding this foreclosure action." *Id.*, 646 N.Y.S.2d at 350. On appeal, the Appellate Division opined that an action to foreclose on a mortgage is an action in equity, and the plaintiff's failure to attempt to execute against the defendants' property upon the judgment did not preclude the plaintiff from maintaining the foreclosure action. The Court noted that the judgment had been voided pursuant to 11 U.S.C. § 524(a)(1), and the plaintiff was enjoined from ever taking any action to enforce the judgment. Therefore, there was no possibility that the defendants would be faced with duplicative litigation based on the same mortgage debt, which was what § 1301 of the R.P.A.P.L. was designed to prohibit. "Indeed, at this juncture it can be stated with certitude that the remedy at law afforded the Bank by virtue of the subject judgment has been exhausted, thereby freeing the Bank to now seek a remedy in equity, by fore-

closure. Accordingly, the principles undergirding the enactment of R.P.A.P.L. § 1301 are not disserved by permitting the Bank to maintain this foreclosure action." 646 N.Y.S.2d at 351.

■ Based on the court's decision in *Valley Savings Bank*, it is clear that the mortgagee's rights under a mortgage are not forever barred from being exercised once a mortgagee obtains a judgment. The Debtor's analysis fails to take into consideration all of the Defendant's rights vis-a-vis the Debtor and the Debtor's property. The Debtor's counsel confuses the Debtor's rights to avoid a judicial lien under Sections 522(f) of the Bankruptcy Code with the Defendant's rights pursuant to the mortgage lien which remains against the Property. In this case, only the judicial lien has been potentially avoided. R.P.A.P.L. § 1301 does not serve to extinguish the Defendant's remaining rights under the mortgage lien by operation of law. Rather, R.P.A.P.L. § 1301 precludes simultaneous actions on the judgment lien and the mortgage, and prohibits a mortgagee from taking any actions in equity to foreclose in this situation until its remedies under the judgment have been exhausted. The mortgagee's rights are preserved *in rem* against the Property, but those rights cannot be exercised until the judgment is returned partially or wholly unsatisfied as the relevant statute requires, or unless the Defendant cannot take action on the judgment for other specific reasons. In this case, if the Debtor's confirmed plan is successfully completed, the Defendant cannot take any action against the Debtor personally since the judgment has been avoided. However, the Defendant continues to retain his mortgage rights against the collateral real property. In the *Valley Savings Bank* case, the special circumstances arose when the mortgagee's judgment was voided by

the debtor's discharge and the mortgagee was forever barred from taking any action to enforce the judgment. Similarly, in this case, the special circumstances may be forthcoming, but will not arise until the Defendant's judgment lien is vacated, which will only occur upon the Debtor's successful completion of the Chapter 13 plan.

The practical result in this case is that the Defendant's equitable rights under the mortgage remain, but the Defendant cannot bring on a foreclosure action during the pendency of this case. Although the Defendant must wait up to five years before it can take any action against the Debtor, it elected to proceed by obtaining a judgment and must live with this result. A similar outcome befell a mortgagee in *Contemporary Mortgage Bankers, Inc. v. High Peaks Base Camp, Inc.*, 156 B.R. 890 (N.D.N.Y.1993). In the *Mortgage Bankers* case, the holder of a first mortgage obtained a judgment in the amount of $487,650 against a guarantor of the mortgage debt, who was a shareholder of the mortgagor. The mortgagor had the judgment docketed and while attempting to execute on the judgment, the mortgagee discovered that the guarantor held a winning lottery ticket with approximate yearly payments of $56,000 over the next fourteen years. The mortgagor elected to serve an execution on these winnings, and subsequently had a second execution levied on the guarantor's residence, which was returned wholly unsatisfied.

The corporate mortgagor filed a petition under Chapter 11 thereafter, and the mortgagee moved to vacate the stay in order to pursue a foreclosure action against the property. The Bankruptcy Court denied the motion, finding that R.P.A.P.L. § 1301 barred the mortgagee from pursuing a foreclosure action because the first execution had not been returned

unsatisfied, and there could be no determination that it would be fully satisfied until 2005. On appeal, the Bankruptcy Court's decision was affirmed, and the District Court held that the mortgagee, having chosen the course of executing on the judgment, could not start a foreclosure action until the judgment was returned wholly or partially unsatisfied. The fact that the mortgagee may have to wait as long as thirteen years before taking any action to foreclose did not sway the court because this section of the Real Property law does not provide for any time limit in which an execution must be satisfied. The right to foreclose would remain an option which could not be exercised until the mortgagee exhausted its remedies under the judgment, no matter how long it would take. 156 B.R. at 896.

The reasoning of the District Court further enforces this Court's view that election of remedies under R.P.A.P.L. § 1301 does not extinguish the mortgage lien. If the mortgagee chooses to obtain a judgment, then the equitable right of foreclosure remains an option for a later date if certain circumstances occur. These circumstances may come to pass in this case, so the mortgage lien remains, and at some point, the Debtor may be faced with a foreclosure action commenced by the Defendant. However, while the Debtor remains in Chapter 13, the Defendant cannot exercise its right to foreclose and its mortgage lien will continue to exist, to be dealt with after confirmation or dismissal of the case as the circumstances dictate.

### CONCLUSION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. section 1334(a).

2. This is a core proceeding pursuant to 28 U.S.C. section 157(b)(2)(A), (B) and (O).

3. The Debtor cannot include hypothetical costs of sale in determining if there is equity in the real property when the Debtor seeks to continue to retain the Property.

4. In determining if there is any equity in the real property to which subsequent mortgage liens can attach, pursuant to section 506 of the Bankruptcy Code, only valid prior mortgages and real property tax liens are to be considered. The Debtor's homestead exemption is not to be considered.

5. If the amounts due pursuant to valid prior mortgage and tax liens do not exceed the fair market value of the real property, and there is equity remaining to which a second or subsequent mortgage can attach, the *Nobelman* decision precludes the avoidance of such mortgage lien.

6. Although the Defendant has failed to answer or otherwise appear in this adversary proceeding, judgment by default is inappropriate because the Plaintiff fails to state a claim under which relief can be granted, and the adversary proceeding is hereby dismissed.

7. The Defendant is barred from taking any action in equity to foreclose on its mortgage regardless of whether the Defendant's claim is paid or not paid under the Debtor's Chapter 13 plan, so long as the Debtor remains in Chapter 13. Upon completion of the Debtor's plan, and after the Defendant's judgment lien is avoided pursuant to prior order of this Court, the Defendant may take appropriate action in equity to enforce its rights *in rem* under the mortgage.