In re Cynthia MOONEY, Debtor.

No. 03–14955 K.

United States Bankruptcy Court,
W.D. New York.

Oct. 30, 2003.

Don B. Iwanicki, Batavia, NY, for Debtor.

William Ilecki, Tonawanda, NY, for Attica–Wyoming.

MICHAEL J. KAPLAN, Bankruptcy Judge.

Ordinarily, a mortgage payoff figure can be stated with certainty without any regard whatsoever to the market value of the mortgaged premises. But some "subsidized" mortgages involve "recapture" provisions that are pegged to the actual or appraised value of the property at the time the mortgage is satisfied. Such a mortgage poses a question here.

In the Second Circuit, a Chapter 13 debtor may treat a junior mortgage on her residence as unsecured under 11 U.S.C. § 506(a) and 11 U.S.C. § 1325(b)(2) in accordance with the 2nd Circuit decision in *In re Pond*, 252 F.3d 122 (2001) if that junior mortgage is not supported by at least a dollar of value. It may be stripped down to a "zero" secured claim, despite *In re Nobelman v. American Savings Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). The residence here was appraised for the Debtor at $45,000 [1] and the Debtor has obtained a payoff statement from the U.S. Department of Agriculture (USDA), the first mortgage holder, in the amount of $54,137.99. There is a second mortgage in excess of $22,000 held by Attica–Wyoming Correctional Employees Federal Credit Union (Credit Union) that would be treated, under the *Pond* Decision, as unsecured if the Debtor's balance on the first mortgage is in fact greater than the value of the residence.

The question here is whether the Debtor may include in the USDA payoff balance the amount of $16,446.35 described as the "maximum amount of subsidy subject to recapture." The mortgage with the USDA is subject to a Subsidy Repayment Agreement (See Appendix A attached) which outlines when and to what extent the borrower may be responsible for any portion of the recapture amount. The Credit Union argues that the amount of recapture ($16,446.35) is not properly included in the payoff amount because the Debtor might never be required to pay any portion of the recapture amount, such as if the Debtor paid the loan off and deferred the recapture until her death, or if the property were to lack sufficient value to "trigger" a "recapture." And it also argues that the structure of the USDA subsidy is such as to assure that there is value supporting the Credit Union loan, in that a certain amount of equity that is otherwise liened by the USDA is released by the USDA loan documents in a way as to give value to the junior mortgage.

Part 1

Taking the latter argument first, it can be seen that the Subsidy Repayment Agreement contemplates that any equity in the home that existed at the time of the subsidized borrowing (by virtue of a down payment on a new purchase, or, in borrowing against a home already owned, by virtue of borrowing less than the value of the home) is set aside to the borrower, [see ¶ 6(f) ], so long as the home is worth more than the balance due on the loan.

Here, using the Debtor's own valuation of $45,000 we find that there is a payoff balance due (excluding recapture) of $37,671.53, leaving equity "subject to recapture" of $7308.47. But $1300 of that would be allowed to the Debtor in a hypothetical sale of the property for $45,000.

And so the Credit Union argues that $1300 is value supporting its junior mortgage, and *Pond* cannot apply.

■ That argument is rejected. So long as the amount claimed by the senior mortgage does not exceed the amount liened (here the Mortgage Instrument had

1. This value is disputed by the credit union.

a face amount of $40,700, but stated that "[T]his instrument also secures the recapture of any interest credit or subsidy which may be granted to the Borrower by the Government pursuant to 42 U.S.C. § 1490a") the junior lienor cannot avail itself of any agreement solely between the borrower and the senior lienor by which the senior lienor might be viewed as having given up value in favor of the borrower. Were this not true, then every episode of some form of grace or forbearance (such a waiver of a late fee) that works in favor of a borrower must be viewed as giving value to the junior lienholder. Here, the recorded mortgage gave notice to the Credit Union that there might be interest subsidy and that the mortgage secured all recapture; the fact that the USDA sets aside some recapture to the borrower is not a waiver of the mortgage in favor of a junior lienor.

More difficult is the closely-related question of whether the Debtor here could herself be viewed as having, in essence, encumbered, in favor of the Credit Union, any right to such a set-aside, thereby giving value to the junior lien. That will be discussed in Part 3 of this Decision.

### Part 2

The Credit Union has argued that if there would be no recapture in a hypothetical sale of the home at the appraised value as of the date of the filing, then no amount of recapture should be included in the mortgage payoff figure used to determine whether there is any value supporting the junior lien. And the Court is satisfied that the Credit Union is correct that there would be no recapture in a hypothetical

sale at the appraised value of $45,000. This is because the Debtor owed in principal, interest and real property taxes, a total of $37,691.53, leaving only $7,308.47 available toward any recapture. But no recapture occurs until after that $7308.47 is reduced (see ¶ 6(c)) by hypothetical costs of sale (for other purposes, we use 10% of fair market value,[2] which equals $4500), and by the amount of principal paid off on the loan calculated at the promissory note interest rate (¶ 6(d)) which was $11,233.85. Only if the $7308.47 were NOT exhausted, would the USDA then be entitled to receive "Any principal reduction attributed to subsidized interest calculations," and (¶ 6(e)) (later on down the priority sequence[3]) a portion of the "value appreciation."

The Court finds that the above approach is fully analogous to the "usual" *Pond* scenario, in which the payoff figure for the senior mortgage, set forth without regard to the value of the property, is fixed on the filing date. That has historically been the relevant date for innumerable purposes under the Bankruptcy Code, and the in the usual *Pond* scenario, it is the relevant date for the computation of the payoff figure for the senior lien.[4]

The Court sees no reason why the same date should not control as to mortgages such as this, where the payoff figure depends upon the market value of the property. The Debtor's own appraisal, obtained for purposes of this *Pond* determination, is for $45,000. Because of the complexities of the "Recapture" formula, it is not clear to the Court how much

---

**2.** See *In re Dixon*, 140 B.R. 945 (Bankr. W.D.N.Y.1992).

**3.** It is in the midst of this part of the sequence that the Debtor's original $1300 equity, as discussed in Part 1 of this Decision, would be set aside to the Debtor.

**4.** This writer has never been asked whether a different date should control, such as, perhaps, the date of the hearing on the motion, or the date of confirmation of the plan, or the date of the Chapter 13 discharge, etc.

higher the value would have to reach in order to hit the precise dollar amount at which recapture would eat up every dollar of value other than the $1300 set-aside. But it seems that that would require a substantially higher value. At some point too there would be at least a dollar of value for the second mortgage. Application of the *Pond* holding in such a case seems enigmatic, at least without having the USDA's computer program for recapture computations as a resource.

Fortunately, however, that is irrelevant because the recapture computations only yields to us the hypothetical payoff amount. Once we have that, we must add back in the value that the USDA would not exact from the Debtor at a $45,000 sale— the $4500 costs of sale and the $11,233.85 in principal-paid-down-at-the-note rate.

### Part 3

The question as to these two items then becomes "Whose value is that, anyway?" It certainly is value to which the first lienor has a right as against the junior lienor. And it certainly is value to which the Debtor has a contract right as against the first lienor.

■ But now we must address the question left unanswered at the end of Part 1 above. Did the Debtor herself convey that value (as security) to the Credit Union by granting it the mortgage?

The answer lies in a document not presented to the Court—the second mortgage instrument. Such instruments typically convey a security interest not just in the land, but in any rents, condemnation awards, hazard insurance proceeds, etc. To the best of this writer's knowledge, second mortgages do not generally convey an owner's rights to any credits, etc. that the owner is entitled-to as against the first lienor. But the fact that the senior lien here was a USDA mortgage may have led the credit union to use a different kind of second mortgage instrument.

### CONCLUSION

The Court finds that the language of the second mortgage instrument will be determinative of whether this *Pond* motion will be successful or unsuccessful.[5] If this matter is not settled by **November 21, 2003,** then the Credit Union shall provide the Court with a copy of the instrument, for the Court's interpretation.

SO ORDERED.

---

**5.** As noted in footnote 1 above, the Credit Union also disputes the $45,000 appraisal; today's ruling is without prejudice to re- turning to that issue if the mortgage instrument is in the Debtor's favor.

## *APPENDIX A*

FmHA Instruction 1951-I
Exhibit A

UNITED STATES DEPARTMENT OF AGRICULTURE
FARMERS HOME ADMINISTRATION
31 Duncan St. Ext., Warsaw, NY 14569

Subsidy Repayment Agreement

Date of Note 10/16/87  Amount of Note 40,700   Date of mortgage 10/16/87

Date of Note _____  Amount of Note _____   Date of mortgage _____

Type of assistance:                1. Interest credit /X/
                                   2. Homeownership Assistance
                                      Program /  /

Address of Property: ___39½ Northview Park__

___Attica, NY 14011__

BORROWER: Cynthia J. Mooney

CO-BORROWER:

1   This agreement entered into pursuant to 7 CFR 1951-I, between the United
States of America, acting through the Farmers Home Administration (FmHA)
(herein called "the Government") pursuant to section 521 of Title V of the
Housing Act of 1949 and the borrower(s) whose name(s) and address(es) appears
above (herein sometimes referred to as "borrower"), supplements the note(s)
from borrower to the Government as described above, and any promissory
note(s) for loans made to borrower in the future by the Government.
Such future notes, when executed, will be listed below the signature line
of this Subsidy Repayment Agreement.

2   I (we) agree to the conditions set forth in this agreement for the
repayment of the subsidy granted me (us) in the form of interest credits
or Homeownership Assistance Program (HOAP) subsidy (hereinafter called
"subsidy").

3   I (we) agree that the real property described in the mortgage(s)
listed above is pledged as security for repayment of the subsidy received
or to be received.  I (we) agree that the subsidy is due and payable upon
the transfer of title or non-occupancy of the property by me (us).  I
(we) understand that the real estate securing the loan(s) is the only
security for the subsidy received.  I (we) further understand that I (we)
will not be required to repay any of the subsidy from other than the value
(as determined by the Government) of the real estate, mortgaged by myself
(ourselves) in order to obtain a Section 502 Rural Housing (RH) loan.

(9-27-79)   SPECIAL PN

FmHA Instruction 1951-I
Exhibit A
Page 2

4    I (we) understand that so long as I (we) continue to own the property
and occupy the dwelling as my (our) residence, I (we) may repay the principal
and interest owed on the loan and defer repaying the subsidy amount until
title to the property is conveyed or the dwelling is no longer occupied by
me (us).  If such a request is made, the amount of subsidy to be repaid
will be determined when the principal and interest balance is paid.  The
mortgage securing the FmHA RH loan(s) will not be released of record until
the total amount owed the Government has been repaid.

5    I (we) agree that Paragraph 6 of this agreement is null and
void should the property described in the mortgage(s) be voluntarily
conveyed to the Government or liquidated by foreclosure.

6    When the debt is satisfied by other than voluntary conveyance of the
property to the Government or by foreclosure, I (we) agree that sale
proceeds will be divided between the Government and me (us) in the
following order:

(a)  Unpaid balance of loans secured by a prior mortgage as well as
real estate taxes and assessments levied against the property which
are due will be paid.

(b)  Unpaid principal and interest owed on FmHA RH loans for the
property and advances made by FmHA which were not subsidy and are
still due and payable will be paid to the Government.

(c)  I (we) will receive from the sale proceeds actual expenses
incurred by me (us) necessary to sell the property.  These may include
sales commissions or advertising cost, appraisal fees, legal and
related costs such as deed preparation and transfer taxes.  Expenses
incurred by me (us) in preparing the property for sale are not allowed
unless authorized by the Government prior to incurring such expenses.
Such expenses will be authorized only when FmHA determines such expenses
are necessary to sell the property, or will likely result in a return
greater than the expense being incurred.

(d)  I (we) will receive the amount of principal paid off on the
loan calculated at the promissory note interest rate.

(e)  Any principal reduction attributed to subsidized interest
calculations will be paid to the Government.

(f)  I (we) will receive my original equity which is the difference
between the market value of the security, as determined by the
FmHA appraisal at the time the first loan subject to recapture of
subsidy was made, and the amount of the FmHA loan(s) and any
prior lien.  This amount is  $1,300.00   and represents
   .031    percent of the market value of the security.  (The

FmHA Instruction 1951-I
Exhibit A
Page 3

percent is determined by dividing my (our) original equity by
the market value of the security when the loan was closed.)  The
dollar amounts and percent will be entered at the time this agreement
is signed by me (us) and will be part of this agreement.

(g)  The remaining balance, after the payments described in (a) thru (f)
above have been paid is called value appreciation.  The amount of
value appreciation to be paid to the Government, in repayment or
the subsidy granted, is the lesser of (1) the full amount of the subsidy or
(2) an amount determined by multiplying the value appreciation by the
appropriate factor in the following table.

Average interest rate paid by me (us)

| No. of Months the Loan was Outstanding | 1% or Less | 1.1 to 2% | 2.1 to 3% | 3.1 to 4% | 4.1 to 5% | 5.1 to 6% | 6.1 to 7% | 7.1 or greater |
|---|---|---|---|---|---|---|---|---|
| 0 to 59 | .78 | .68 | .60 | .51 | .44 | .32 | .22 | .11 |
| 60 to 119 | .75 | .66 | .58 | .49 | .42 | .31 | .21 | .11 |
| 120 to 179 | .73 | .63 | .56 | .48 | .40 | .30 | .20 | .10 |
| 180 to 239 | .65 | .56 | .49 | .42 | .36 | .26 | .18 | .09 |
| 40 to 299 | .59 | .51 | .46 | .38 | .33 | .24 | .17 | .09 |
| 300 to 359 | .53 | .45 | .40 | .34 | .29 | .21 | .14 | .09 |
| 360 to 396 | .47 | .40 | .36 | .31 | .26 | .19 | .13 | .09 |

(h)  I (we) will receive the amount of value appreciation less the
amount paid the Government as determined in (g) above.  I (we) will
also receive an additional amount in proportion to my original equity
by reducing the amount of value appreciation due to the Government by
the percent of my (our) original equity as shown in (f) above.

(i)  If I (we) am the recipient of HOAP, the amount of value appreciation
to be recaptured will be calculated as if I (we) had paid 1 percent
interest on the loan, unless the average interest rate paid by me (us)
was greater than 1 percent.  In such cases it will be determined based
on the average interest rate paid by me (us).

(j)  If this agreement is for a subsequent loan(s) only, the amount
of repayment determined in (g) above will be reduced by the following
percent:_____.  This percent will be determined by dividing the
amount of the loan(s) subject to recapture by the total outstanding
RH debt.  This percentage will be entered at the time I (we) sign this
agreement.

(k)  If this agreement is for more than one loan that is subject to
recapture, the subsidy repayment computations will be based on the total
subsidy granted on all loans.

(9-27-79)  SPECIAL PN

FmHA Instruction 1951-I
Exhibit A
Page 4

7     When a FmHA RH loan is repaid by other than foreclosure, voluntary conveyance, or sale of property, the amount of subsidy to be repaid the Government will be determined in the same manner as described in paragraph 6 of this Exhibit but based on the appraised value determined by FmHA instead of sales price. In such cases, the subsidy due the Government will remain a lien on the property until paid. It must be paid upon non occupancy, sale, or transfer of title to the property.

8     I (we) have read and agree to the provisions of this agreement.

_Cynthia J. Mooney_ Borrower
Cynthia J. Mooney

_____ Co-Borrower

_9/22/87_
Date signed

Accepted and Agreed to
By _____ (FmHA Official)

_____ (Title)

_9/22/87_
Date