**In re Kathleen Monica JACOBS, Kenneth H. Jacobs, Debtors.**

No. 01–10309 K.

United States Bankruptcy Court, W.D. New York.

June 1, 2001.

John H. Ring, III, Buffalo, NY, trustee.

G. Michael Miller, Dibble & Miller, Rochester, NY, for debtor.

MICHAEL J. KAPLAN, Bankruptcy Judge.

This is a Trustee's objection to Debtors' claimed exemption in life insurance policies under 11 U.S.C. § 522 and state law. There are two policies owned by the insured individuals, Kenneth and Kathleen Jacobs, respectively, as to which the beneficiaries are the spouse of the owner/insured. (In addition, Mrs. Jacobs is the owner of a third policy naming her spouse as the insured. That policy is clearly exempt.)

## SUMMARY OF REASONING AND RESULT: THE MYTH THAT ALL INTERESTS OF HUSBAND AND WIFE IN LIFE INSURANCE ARE EXEMPT IN NEW YORK

This case presents the same issue addressed by this Court in *In re Mata*, 244 B.R. 580 (Bankr.W.D.N.Y.1999)—whether a husband and wife, as joint Chapter 7 debtors who have each "effected" a life insurance policy on their own life and have named their spouse as the beneficiary, may exempt the loan value of the policies (or cash value) under § 3212(b)(1) of N.Y. Insurance Law.

In many other jurisdictions, the loan value of life insurance, or the cash surrender value or death benefits thereof, etc. are not entirely exempt.

█ But New York permits an unlimited exemption in one narrow instance. It has provided an unlimited exemption for all "proceeds and avails" of any life insurance policy that a husband owns on the life of his wife, or that a wife owns on the life of her husband.[1] Therefore, while bank-

---

1. In pertinent part N.Y. Insurance Law § 3212(b) provides: "(2) If a policy of insurance has been or shall be effected upon the life of another person in favor of the person effecting the same or made payable otherwise to such person, the latter shall be entitled to the proceeds and avails of such policy as against the creditors, personal representa- tives, trustees in bankruptcy and receivers in state and federal courts of the person insured. If the person effecting such insurance shall be the spouse of the insured, he or she shall be entitled to the proceeds and avails of such policy as against his or her own creditors, trustees in bankruptcy and receivers in state and federal courts."

ruptcy courts in New York take pride in the fact that the horror stories of multi-million dollar homesteads "can't happen here" (only $10,000 is allowed for a homestead; $20,000 in a joint case), and in the fact that even a pension or personal injury recovery are limited by a "reasonableness" standard, it appears that there is no limit whatsoever (the possibility of fraudulent transfer aside) on what may be placed beyond creditors' reach in the form of a life insurance policy that one "effects" on his or her spouse's life.[2] (This is the only "unlimited" exemption, under New York law, that can be found.)

In separate decisions, the other judges of this Court have decided that the statutory text set forth in footnote 1 must be interpreted such that it makes no difference who owns the policy. Hence, according to my colleagues, if I put a hundred thousand dollars into a policy on my own life naming my wife as beneficiary, I have put that money beyond the reach of *her* creditors (as well as mine), whether or not I can borrow-against or surrender the policy at will for cash.

That may have been correct before the 1978 Bankruptcy Reform Act, when there could be no "joint" cases, and when the interest of one who is merely a beneficiary in a whole life policy was probably too ephemeral to become property of the bankruptcy estate unless the designation of the bankrupt as beneficiary was irrevocable. But the Bankruptcy Reform Act of

---

N.Y. Insurance Law § 3212(b) provides:

(b)(1) If a policy of insurance has been or shall be effected by any person on his own life in favor of a third person beneficiary, or made payable otherwise to a third person, such third person shall be entitled to the proceeds and avails of such policy as against the creditors, personal representatives, trustees in bankruptcy and receivers in state and federal courts of the person effecting the insurance.

(2) ... [as above]

(3) If a policy of insurance has been or shall be effected by any person on the life of another person in favor of a third person beneficiary, or made payable otherwise to a third person, such third person shall be entitled to the proceeds and avails of such policy as against the creditors, personal representatives, trustees in bankruptcy and receivers in state and federal courts of the person insured and of the person effecting the insurance.

(4)(A) The person insured pursuant to paragraph one of this subsection or the person effecting the insurance other than the spouse of the insured pursuant to paragraph two hereof, and the person effecting the insurance pursuant to paragraph three hereof, or the executor or administrator of any such persons, or a person entitled to the proceeds or avails of such policy in trust for such persons shall not be deemed a third person beneficiary, assignee or payee.

(B) A policy shall be deemed payable to a third person beneficiary if and to the extent that a facility-of-payment clause or similar clause in the policy permits the insurer to discharge its obligation after the death of the person insured by paying the death benefits of a third person.

(5) This section shall be applicable whether or not the right is reserved in any such policy to change the designated beneficiary and whether or not the policy is made payable to the person whose life is insured if the beneficiary, assignee or payee shall predecease such person; and no person shall be compelled to exercise any rights, powers, options or privileges under such policy.

(6) If a policy of insurance has been or shall be effected by any person on his own life or upon the life of another person, the policy owner shall be entitled to any accelerated payments of the death benefit or accelerated payment of a special surrender value permitted under such policy as against the creditors, personal representatives, trustees in bankruptcy and receivers in state and federal courts of the policy owner.

2. Of course, considerations of § 707 "abuse," or the "good faith" requirement in Chapter 11, 12 or 13 would restrict this result.

1978 dramatically changed such things, and there should be no doubt that in the absence of an exemption statute, the beneficiary's interest (whatever that is) in a life insurance policy is not exempt in the bankruptcy case of the beneficiary.

How that might work in a bankruptcy case of the beneficiary alone remains to be seen, and will be explored a bit at the end of this decision. But this writer rendered a decision in the case of *In re Mata*, 244 B.R. 580 (Bankr.W.D.N.Y.1999) that examined the joint bankruptcy case of a husband and wife who had reciprocal policies in which each was a beneficiary of a policy owned by the other and on which the owner was the insured. The decision in *Mata* was that where the two people, husband and wife, were joint debtors under 11 U.S.C. § 302, and the two people together could at will elect to convert the policy into cash, then their bankruptcy trustee could do so as well, because the exemption statute protects the value of the policy only as against the creditors of the insured or of the owner, not against the creditors of one who is a mere beneficiary.[3]

In *Mata*, it was not necessary for the Court to decide which spouse's creditors would benefit from which policy. Since then, the intervening decisions by the two other judges of this Court are persuasive that the creditors of the owner/insured may not enjoy the value of the policy, as discussed hereinafter. The fact that those two other decisions disagree with the result in *Mata* necessitates (for the benefit of any reviewing court and for the benefit of practitioners attempting to determine how the law on this subject might eventually be resolved in this District) a more detailed examination of the applicable law than might otherwise be necessary.

■ With deep respect for my esteemed colleagues, I dissent from their elevating, to law, their profound concern for matters of social policy. Such concern, explained in their decisions,[4] is not a reason to ignore an unambiguous statute, but rather is reason to return this issue to the legislature, where it belongs. This is done by applying the statute as written.

It is a clear statute in the relevant regard (though opaque in other regards). It is at odds with the view noted in the *Polanowski* case that "all insurance poli-

---

**3.** The term "mere beneficiary" is used here to connote a beneficiary who does not own the policy. It does not mean that he or she might not have property rights—for example, a beneficiary might have the right to veto a change of beneficiary (under some policies).

**4.** In *Polanowski*, 258 B.R. 86 (Bankr. W.D.N.Y.2001), Hon. Carl L. Bucki, U.S.B.J. recognizing that *Mata* provides an exemption only for limited circumstances stated "ordinary consumers ought not to be required to exercise such foresight in structuring their insurance programs. Rather, the exemption is available to spouses whether the insurance policies they effect are on their own lives or on those of their spouses.... [T]he second sentence of section 3212(b)(2) was needed to extend the benefits of section 3212(b)(1) to all reciprocal policies effected for the benefit of a spouse. When an owner is also the beneficia-ry on a policy covering the life of his or her spouse, there is no third party beneficiary to whom the protections of 3212(b)(1) can be extended. Hence the legislature recognized a need for the second sentence of section 3212(b)(2). When an insured policy owner designates any third party to be the beneficiary, however, the exemption of section 3212(b)(1) applies, whether or not a spousal relationship exists between owner and beneficiary." *Id.* at 90. In *In re Hickson*, No. 00–20130 (Bankr.W.D.N.Y. Aug. 14, 2000), Hon. John C. Ninfo II, Chief U.S.B.J. stated "It seems to this Court that a Hickson-type policy [a policy owned by the insured and for benefit of his/her spouse] is the most common form of life insurance policy that individuals take out to protect their spouse and family and, therefore, the New York State Legislature intended for it to be exempt in bankruptcy."

cies are exempt in bankruptcy in New York." This writer submits that that is a myth. The statute may be flawed in that it might be a trap for the unwary, or it may result in disparate and untoward results when cases are filed separately rather than jointly. But to jump to the conclusion that the legislature of the state of New York has already provided an exemption, unlimited in dollar amount, for any and all interests in all life insurance policies between husband and wife flies in the face not only of the particular exemption statute at hand, but in the face of the fact that there is no unlimited exemption anywhere in New York Law for any type of asset, except for the value of a life insurance policy *owned by the beneficiary on his or her spouse's* life.

The myth and the two cases that elevate it to law do not adequately address the panoply of circumstances under which a beneficiary spouse in modern times is not the second-class citizen that the 19th century wife was when the early statutes in this regard were enacted. In present time it is routine that a policy cannot be borrowed-against, assigned, used as security, surrendered, allowed to lapse, or cashed-in, without the beneficiary's consent. The beneficiary spouse has rights, and so too might the beneficiary's creditors.

Further, as working adults and their spouses have become what some observers think to be the largest and most powerful special interest group in the nation (through their pension plans, IRA's, 401K's, etc.), "whole life" insurance policies are no longer irreplaceable retirement devices. Rather, term-life policies serve to address catastrophe, and "whole life" may

or may not have any "insurance value" at all, depending upon whether and the extent to which the face value exceeds the cash value—where the cash value exceeds the death benefit, it is simply an investment, not insurance.

And just as reciprocal wills were presumptively a "contract" between a husband and wife in New York until that presumption was abrogated by statute in 1983, reciprocal insurance policies might yet be so viewed, and might be viewed to involve contract rights that may be enforced by the beneficiary's voluntary assignee—the bankruptcy trustee—for the benefit of the beneficiary's creditors. Indeed, in divorce cases the beneficiary is often viewed to be the equitable owner of half of the value of the policy, entitled to that amount from the ex-spouse,[5] and such might be found to be the result in a bankruptcy case, were the myth not to obscure clear examination and analysis of the beneficiary's rights.

It is the fact that such lines of inquiry and of reasoning have become victims of the myth that compels this substantial (and, I regret, protracted) exposition thereof.

### EXEMPTIONS FOR LIFE INSURANCE IN OTHER JURISDICTIONS

It is both unnecessary and unwise to view the New York State exemptions regarding life insurance in isolation. Examining how life insurance exemption is handled elsewhere instructs an understanding of the social policy issues that legislatures have addressed in this regard, and so cautions against jumping to conclusions about

---

5. See, for example, *Life Insurance and Divorce*, 16 No. 10 Equitable Distribution. 109, 1999: "When all or part of the life insurance policy is marital property, the owning spouse is generally awarded the life insurance policy, and the nonowning spouse is generally awarded cash or other property equal to his or her *equitable share* of the policy." [Emphasis added.]

what the New York State Legislature, or any other legislature, might have intended.

The Congressionally-created exemptions that were applicable in states that permitted the use of the federal exemption list is a good place to begin. The following exemptions are found in 11 U.S.C. § 522(d)(7), (8), and (11)(C). These were exempt:

(7) Any unmatured life insurance contract owned by the debtor, other than a credit life insurance contract.

(8) The debtor's aggregate interest, not to exceed in value [$ 8625] in any accrued dividend or interest under, or loan value of, any unmatured life insurance contract owned by the debtor under which the insured is the debtor or an individual of whom the debtor is a dependent.

(11) The debtor's right to receive, or property that is traceable to—(C) a payment under a life insurance contract that insured the life of an individual of whom the debtor was a dependent on the date of such individual's death, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor;

The Legislative history to these provisions states:

Paragraph (7) exempts a life insurance contract, other than a credit life insurance contract, owned by the debtor. This paragraph refers to the life insurance contract itself. It does not encompass any other rights under the contract, such as the right to borrow out the loan value. Because of this provision, the trustee may not surrender a life insurance contract, which remains property of the debtor if he chooses the Federal exemptions. Paragraph (8) permits the debtor to exempt up to [$8,625] in loan value in a life insurance policy owned by the debtor under which the debtor or an individual of whom the debtor is a dependent is the insured. The exemption provided by this paragraph and paragraph (7) will also include the debtor's rights in a group insurance certificate under which the insured is an individual of whom the debtor is a dependent (assuming the debtor has rights in the policy that could be exempted) or the debtor. A trustee is authorized to collect the entire loan value on every life insurance policy owned by the debtor as property of the estate. First, however, the debtor will choose which policy or policies under which the loan value will be exempted. The [$8,625] figure is reduced by the amount of any automatic premium loan authorized after the date of the filing of the petition under section 542(d).

H.Rept. No. 95–595 to accompany H.R. 8200, 95th Cong., 1st Sess. (1977) pp. 360–363, 1978 U.S.Code Cong. Admin. News 1982 p. 5787.

It should be emphasized that paragraphs 7 and 8 only provide an exemption for a policy that is owned by a debtor. And under paragraph 8, if that policy is on the life of the debtor or on the life of someone of whom the debtor is a dependent, the loan value above $8625 is not exempt. If the insured is not someone upon whom the debtor is dependent, there is no exemption for the loan value at all; e.g. certain policies on the life of one's business partner.

A right to receive a payment under a life insurance contract that insured someone else's life, now deceased, is limited "to the extent reasonably necessary for the support of the debtor and any dependent of the debtor."

And in all states, 11 U.S.C. § 541(a)(5)(C) deals with interests that a

debtor acquires or becomes entitled to acquire within 180 days after the date of the filing of the petition "as a beneficiary of a life insurance policy or of a death benefit plan." That provision has been said to represent "Congress's most recent effort at preventing debtors from manipulating the bankruptcy date so as to deprive creditors of certain assets, including those acquired as a beneficiary of a life insurance policy." [6]

Many states, in "opting out" of the federal exemption list, adopted state exemptions identical or nearly identical to the federal exemptions, with regard to life insurance.[7] At least one state apparently still permits the use of the federal exemption list.[8]

On the other hand, states that did not base their insurance exemptions on the federal exemption have selected from a wide panoply of provisions, a brief examination of which provides substantial insight into the policy issues addressed by legislatures. Here are some, in no particular order.

*Fully Exempt* —In Ohio, when "opting out" of the federal exemption list, the legislature adopted a statute that stated that "[a]ll contracts of life or endowment insurance ... upon the life of any person, or any interest therein, which may hereafter mature and which have been taken out for the benefit of ... the spouse or children ... shall be held, together with the proceeds or avails of such contracts ... free from all claims of the creditors of such insured person or annuitant." *In re Bess*, 40 B.R. 509, 510 (Bankr.S.D.Ohio 1984) *aff'd*, 47 B.R. 414, (S.D.Ohio 1985) (quoting

Ohio Revised Code Section 3911.10). Thus in the case of *In re Bess*, the bankruptcy court, in a joint case of husband and wife, stated: "We recognize ... that where husband and wife are both debtors, are indebted to the same creditors, and own policies on the life of each other naming themselves as beneficiaries, the language of [the statute] shields a sizable asset from the Trustee. The legislature, however, has not made an exception in its insurance exemption for joint debtors, and thus we believe that the stated public policy of Ohio in protecting the family of the debtor must govern." *Id.* at 511.

*Trustee Could Cash–In the Policy* —The state of New Hampshire, when "opting out" of the federal exemptions, adopted this provision: "If a policy of life or endowment insurance is effected by any person on his own life or on another life, in favor of a person other than himself having an insurable interest therein, the lawful beneficiary thereof other than himself or his legal representatives, shall be entitled to its proceeds and all other benefits against creditors and representatives of the person effecting the same." *In re Caron*, 82 F.3d 7, 9 (1st Cir.1996), (quoting N.H.Rev.Stat.Ann. § 408:2). Thus, in the joint bankruptcy case of *In re Caron*, the First Circuit ruled that that statute "cannot be read to exempt the policy in favor of an owner/insured, but only in favor of the beneficiary. And here, the rights of the beneficiary ... do not arise until [the insured's] death, and her prospective rights can be diminished or terminated by him during his lifetime. As such, because [the insured] was alive at the time the petition in bankruptcy was filed, [the wife]

6. *In re Woodson*, 839 F.2d 610, 619 (9th Cir. 1988).

7. See, for example *In re Gamble*, 168 F.3d 442, 444 (11th Cir.1999) (discussing the Georgia state exemption statute); *In re Petruzzelli*,

139 B.R. 241, 244 (Bankr.E.D.Cal.1992); *In re O'Brien*, 67 B.R. 317, 319 (Bankr.N.D.Iowa 1986).

8. See, *In re Brucher*, 243 F.3d 242 (6th Cir. 2001) (discussing Michigan exemptions).

had no rights in the proceeds, cash value, or other benefits of the policy." *Id.* at 10.

The First Circuit added that at most, "the exemption statute shelters a policy from the creditors of the insured; it makes no reference to the creditors of the beneficiary," and it pointed out legislative history "indicating that the New Hampshire legislature specifically chose to delete [a provision] that would have [stated] ... that the exemption was available 'whether or not the right to change the beneficiary is reserved or permitted to such person [the owner/insured].'" *Id.* at 10. The court stated: "We infer from the deletion that the legislature declined to extend the exemption to policies where the owner/insured retained the power to alter the beneficiary." *Id.* Similarly, the court pointed out that the legislature had deleted a provision that would state that " '[n]o court and no trustee or assignee for the benefit of creditors, shall elect for the person effecting such insurance to exercise such right to change the named beneficiary.'" *Id.* (quoting New Hampshire House Report). And the court inferred from that deletion a legislative intent that the statute should not prevent a bankruptcy trustee from stepping into the policy owner's shoes to exercise policy rights, such as reaching the cash value or changing the beneficiary.

*Beneficiary's Interest is Mere Expectancy Under Well–Settled State Law* —In Tennessee, the bankruptcy court in the joint case of *In re Olien,* 256 B.R. 280 (Bankr.E.D.Tenn.2000) examined a 1994 enactment of the Tennessee Legislature that dealt expressly with cash surrender value of policies made for the benefit of spouses and/or children. There was an ambiguity in the statute. The court found that although the provision exempted the cash values of the policies from creditors of the insured, the statute did not provide an exemption for the beneficiary of the co-debtor who was the beneficiary on the policy. However, that court pointed out that it is well-settled under Tennessee law that non-owner beneficiaries of life insurance polices have " 'no vested right or interest in the policy but rather a mere expectancy.'" *Id.* at 283 (internal citation omitted). Thus, although there was no exemption with regard to creditors of the beneficiary-debtor, the policies were not "property of the estate," with reference to the estate of the beneficiary.

*Trustee Could Reach Loan Value* —The state of Missouri adopted a provision similar to the federal exemption, and in a case in which the insured/owner was the sole debtor, the court in the case of *In re Martin,* 224 B.R. 749 (Bankr.E.D.Mo.1998) established that the "Debtor should not be permitted to deprive his creditors of the loan value of his policies by refusing to utilize his matured right to access that value." *Id.* at 755. The Court determined that the statute exempted only $5,000 of dividend and loan value from the claims of the debtor's creditors, and declared that the Trustee could access the other $18,000 (approximately).

*Death Benefit Not Exempt from Claims of Beneficiary's Creditors* —The state of Oregon adopted a provision that states that "[a] policy of life insurance payable to a beneficiary other than the estate of the insured, having by its terms a cash surrender value available to the insured, is exempt from execution issued from any court in this state and in the event of bankruptcy of such insured is exempt from all demands in legal proceeding under such bankruptcy." *In re McAlister,* 56 B.R. 164, 165 (Bankr.D.Or.1985) (quoting Oregon statute). In the case of *In re McAlister,* the petition was filed as a joint petition of husband and wife, but the husband died a few weeks after the filing. Thus it was

the proceeds of the policy rather than the cash surrender value, that was at issue, and the wife had become entitled to those proceeds within 180 days after the filing of the petition. The court thus looked at a different Oregon statute which stated that "[w]hen a policy of insurance is effected by any person on his own life or on another life in favor of some person other than himself having an insurable interest in the life insured, the lawful beneficiary thereof, other than himself or his legal representative, is entitled to proceeds against the creditors or representatives of the person effecting the policy." *Id.* at 166. The court stated "[t]here is nothing in the statute that would exempt the proceeds from the claims of the beneficiary's creditors." *Id.* Thus, the court stated that "the debtor may request that her bankruptcy estate be administered separately from that of her deceased husband and she may object to the claims of creditors who hold claims solely against her deceased husband and under which she had no liability." *Id.* But the proceeds of the policy were not exempt as to her own creditors.

*Death Benefit, Again*—Similarly, in North Carolina, a joint petition was filed in the case of *In re Sharik,* 41 B.R. 388 (Bankr.E.D.N.C.1984), but Mrs. Sharik died within 180 days after the filing of the petition. A North Carolina statute stated that where "a person insures her own life for the sole benefit of her spouse or children or both, the insurance proceeds, in the event of death, are free from all claims of creditors of the insured, and the policy shall not be subject to the claim of any creditor of the insured during the insured's life" *Id.* at 390. (Quoting statute) The court pointed out that this does *not* extend the protection of the exemption to the beneficiary of the policy once the proceeds are in the beneficiary's hands. The proceeds are treated like any other asset of the beneficiary and are available to his

creditors and any creditors in which he was the co-obligor with his wife. The insurance proceeds were declared to be an asset of the Chapter 7 estate of the husband and were awarded to be delivered to the trustee for administration.

*And Yet Again*—In Florida, as of 1986, a statute provided that

The cash surrender values of life insurance policies issued upon the lives of citizens or residents of the state and the proceeds of annuity contracts issued to citizens or residents of the state, upon whatever form, shall not in any case be liable to attachment, garnishment or legal process in favor of any creditor of the person whose life is so insured or of any creditor of the person who is the beneficiary of such annuity contract, unless the insurance policy or annuity contract was effected for the benefit of such creditor.

*In re Butcher,* 62 B.R. 162, 168 (Bankr. E.D.Tenn.1986) quoting Fla.Stat. § 222.14 (West Supp.1986).

Thus the Court in *In re Butcher,* (applying Florida law) stated: "[T]his Court can readily perceive a reason for the legislature to limit the exemption so as to protect cash surrender value only from the creditors of owner-insured and not also from creditors of owner-beneficiaries." *Id.* at 168. Reciting a companion statute the Court said, "These statutes were obviously not intended to protect such proceeds from the claims of the *beneficiaries'* own creditors. This court does not believe that [the companion statute] was intended to prevent a creditor of a *beneficiary* from reaching benefits paid to the beneficiary upon the insured's death, nor similarly that [the statute] was intended to prevent a creditor of the *beneficiary* from reaching the cash surrender value of the policy where the beneficiary, by virtue of owner-

ship of the policy, has a right to those proceeds prior to the insured's death." *Id. at 169.* Thus, that Court read the statute literally where the statute uses the phrase "the beneficiary of such annuity contract" rather than the Debtor's preferred interpretation, which would be "the beneficiary of such insurance policy or annuity contract."

*And Still Again* —California adopted provisions similar to the federal provisions, and as to the death benefits stated that "Benefits from matured life insurance policies ... are exempt to the extent reasonably necessary for the support of the judgment debtor and the spouse and dependents of the judgment debtor." *In re Woodson,* 839 F.2d 610, 613 n. 3 (9th Cir. 1988) (quoting California Statute). Thus, in the case of *In re Woodson,* the 9th Circuit ruled, in a joint bankruptcy case in which the wife died three days after the filing of the petition, that the fact that the policy was exempt on the date of filing because the husband was the owner and the policy was unmatured, the million dollar death benefit that he received as beneficiary could be exempted only to the extent "reasonably necessary." The 9th Circuit disagreed with a 4th Circuit decision in this regard—*BancOhio National Bank v. Walters,* 724 F.2d 1081 (4th Cir. 1984), which held that the proceeds of an exempt policy owned by the Debtor on the petition date were completely exempt after maturity under the federal provision, 11 U.S.C. § 522(d)(7).

## THE STATUTE IS AMBIGUOUS IN SOME REGARDS

■ Against this background, we see that § 3212 can be opaque in some hypotheticals. The term "proceeds and avails" includes cash surrender and loan values, according to subsection (a)(1).[9] As between a bankruptcy trustee of the insured and a beneficiary, § 5212(b)(1) states that the beneficiary is "entitled" to the "proceeds and avails."

How can this be so if the beneficiary has no contractual right to borrow against or surrender the policy because that right belongs to the owner? Has the statute transferred that right to the beneficiary in the event of the bankruptcy of the owner? Doubtful. But if it is so, it cannot be said that even if the owner has filed bankruptcy, the joint or separate filing of a bankruptcy case by the beneficiary brings only a "mere expectancy" into the bankruptcy estate. Rather, it would be clear that such trustee could take out the loan value of the policy for the benefit of the beneficiary's creditors. That result could not be prevented by operation of subsection (b)(5) of § 3212 [10] because no-one is being "compelled" to exercise any rights, powers, options or privileges "under such policy." Instead, the beneficiary's right "under

---

9. § 3212(a) provides:
   (a) In this section:
   (1) The term "proceeds and avails", in reference to policies of life insurance, includes death benefits, accelerated payments of the death benefit or accelerated payment of a special surrender value, cash surrender and loan values, premiums waived, and dividends, whether used in reduction of premiums or in whatever manner used or applied, except where the debtor has, after issuance of the policy, elected to receive the dividends in cash.

10. Section 3212(b)(5) states that "(5) This section shall be applicable whether or not the right is reserved in any such policy to change the designated beneficiary and whether or not the policy is made payable to the person whose life is insured if the beneficiary, assignee or payee shall predecease such person; and no person shall be compelled to exercise any rights, powers, options or privileges under such policy." N.Y.Ins.Law § 3212(b)(5) (McKinney 2000).

such policy" never included the right to cash-in the policy. Rather, that would be a statutory right *bestowed by § 3212(a)*. Moreover, the trustee would be merely standing in the beneficiary's own shoes, not compelling anyone to do anything.

■ That result seems too bizarre to be a *common sense interpretation of even such a poorly-drafted statute*. It seems more sensible to conclude that the statute means that the trustee will not be permitted to "parse" the policy rights and attributes to the detriment of the beneficiary. A trustee may not, for example, surrender the policy to the detriment of the beneficiary, or borrow against it to the detriment of the beneficiary, or change the designation of beneficiary to be the owner, or the owner's bankruptcy trustee.

But, *whose* trustee may not do these things? It is clear that the trustee of the *insured*/owner may not do it, and it is clear that the trustee of the *beneficiary*/owner may not do it if the beneficiary/owner is the spouse of the insured. As to the trustee of a *mere beneficiary*, however, the statute is silent despite the availability of unequivocally clear language if exemption had been the legislature's intention.

## POLICY ALTERNATIVES NOT EXPRESSED IN *POLANOWSKI* AND *HICKSON*

In years past, the State Legislature recodified what originally had been §§ 55 and 55–a of the Insurance Law into Insurance Law § 166, and added the second sentence of what is now (b)(2) of § 3212, but it did not make a corresponding change to (b)(1). If the legislature's intention was an unlimited, "global" exemption, why did it not make this simple clarification at the same time?

My colleagues of this District have concluded that the legislature thought no change was needed to (b)(1). But if amending (b)(2) for other reasons, why not make the "technical" change to (b)(1) to make the matter explicit?

In light of the fact that the federal exemption list and many states chose *not* to enact a global exemption, one may hypothesize policy reasons for *not* clearly making the beneficiary's interest exempt, when the beneficiary is not the owner.

Firstly, given the availability of spendthrift trusts, and the ability to name a spendthrift trust as beneficiary of a policy for the benefit of a spouse, one may conclude that an owner who elects not to utilize such a trust might well not wish the "proceeds and avails" of a policy to be exempt from the claims of the beneficiary's creditors. It may have been precisely the owner/insured's intention that others be willing to extend credit to his or her spouse on an expectation of eventual payment from the policy, for clothes, food, education, and the like.

Secondly, the supposition that the statute's silence connotes "exemption" is arguably so misplaced as to be cynical. Why would one suppose that the intention of the owner is non-payment of the *beneficiary's* debts, rather than payment of those debts? It makes perfect sense that exemption would be the intention as against creditors of the *insured* when the insured is intending to make provision for his or her dependents. I, for example, "should" be permitted to make provision for my family, secure from my own creditors within reason (which is to say, where there is no fraudulent transfer and no overreaching that might taint the exemption). But if I were terminally ill and this fact were known to all, and my wife were to need credit for her own support, and for the support and education of our children, I would not want that credit denied be-

cause of prospective creditors' concern that *she* could later file bankruptcy and exempt the "proceeds and avails" of the policy that I "effected" on my own life a few years ago.

Thirdly, at the time that § 3212 was last visited by the legislature, and today as well, it would be sensible for my wife and I to decide who will "effect" the policy, and consequently how it might be "scored" by our respective, prospective creditors: The persons we have asked to evaluate our creditworthiness.

Fourth, any spouse who is neglected, or abused or otherwise worried, must, if able, be permitted to go out and purchase insurance on the life of his or her spouse (subject to the same reasonable limitations against fraud and overreaching), and to have that value not only be exempt from the claims of the insured (over whose actions the owner/beneficiary might have no control) but also exempt from the creditors of the owner/beneficiary/spouse who might be in debt only because the insured chose not to suitably support her or him. But it would not make sense in that scenario to let the neglectful or even abusive spouse to "hide" the asset from the *dependent's* creditors even after causing the beneficiary to fall into debt and a subsequent bankruptcy.

My colleagues' decisions presume the results, and the results leave all creditors out in the cold. Though some states have spoken clearly to that effect, other states have spoken clearly to a different effect. New York has not spoken at all as to a non-"effecting" beneficiary's bankruptcy case, and that does not constitute the bestowing of an exemption.

### THE *POLANOWSKI* DECISION'S UNDERPINNINGS

The decision in the consolidated cases of *In re Polanowski, Pascuzzi, Jones, and Russell*, 258 B.R. 86 (Bankr.W.D.N.Y.2001) is that all interests in husband/wife life insurance policies are exempt, including cash surrender value, in any bankruptcy case, under New York Insurance Law § 3212.

■ In the *Polanowski* decision a number of cases are offered for the proposition that the interest of the policyholder is always exempt. It is, of course, beyond cavil that this Court is bound by a Second Circuit Court of Appeals decision that recognizes that there exists "an exemption for the interest of a debtor in an insurance policy that that debtor had effected on his or her own life in favor of any third person beneficiary, including a co-debtor spouse." *In re Polanowski* at 89 (discussing the holding in *In re Messinger*, 29 F.2d 158 (2nd Cir.1928), *cert. denied*, 279 U.S. 855, 49 S.Ct. 351, 73 L.Ed. 996 (1929)). Absent a fraudulent transfer (dealt with elsewhere in New York law), it is appropriate for one spouse to pay for a policy for the benefit of the other spouse, and for creditors of the payor (the "effector") to be left without recourse to the policy.

■ The undersigned stated in *Mata* "It is not clear to the Court whether the respective cash surrender values are available only to the creditors of the insured/owner or only to the creditors of the beneficiary," and it was also stated there that it was not necessary in that case to decide which of the two debtors' bankruptcy estates should be viewed as owning the right to the cash surrender value of which policy. *In re Mata* at 583. The cases cited in the *Polanowski* decision stand squarely for the proposition that the right to the cash surrender value belongs to the beneficiary as against the creditors of the insured who "effected" (who "owned") the policy. But not one of the cases cited in *Polanowski* addresses the rights of the

creditors of the beneficiary.[11] Archaic as it might seem now, it was thought in the days of the *Messinger* decision that the one who "effected" the policy paid the premiums, and did so from separate assets.[12] (In the modern age, virtually all property not brought into the marriage at the outset, or inherited later, is *NOT* "separate property" in this State, as described below.)

As regards the creditors of the beneficiary, *Polanowski* relies on two other cases. The first is *In re Greenberg*, 271 F. 258 (2nd Cir.1921), holding that a benefi-ciary has only a mere .expectancy. That was a case which preceded the *Messinger* decision by seven years and preceded the enactment of the pertinent exemption statute by six years. (The statute became effective on March 31, 1927.)[13] *Greenberg* did not concern creditors of the beneficiary. Later, the *Messinger* court noted that the New York State enactment was a dispositive change in the law, and in fact the court permitted the bankruptcy trustee to claim the cash surrender value of the policies up to the dollar amount of proved claims of creditors that predated the March 31, 1927 change in the law. (Unlike

---

**11.** Rather, the Second Circuit decision in the case of *In re Messinger* upheld an exemption for cash surrender value in the bankruptcy case of the insured/policyholder, and never mentioned what rights might exist as to creditors of the beneficiary/spouse. This was also true in the case of *In re Keil*, 88 F.2d 7 (2nd Cir.1937), and *In re Horwitz*, 3 F.Supp. 16 (W.D.N.Y.1933). The New York Court of Appeals decision in *Chatham Phenix National Bank and Trust Co. v. Crosney*, 251 N.Y. 189, 167 N.E. 217 (1929) too dealt only with the exemptibility of the value of the policy as against creditors of the insured/husband (who was already deceased). In the case of *Gross v. Gross*, 280 A.D. 433, 114 N.Y.S.2d 117 (1952) an estranged wife of a policyholder obtained a judgment against her husband for unpaid alimony and sued the insurance company in an attempt to levy on the cash surrender value of the life insurance policy on which her husband's daughters were beneficiaries. She was not the beneficiary. The Court upheld the exemption of the cash surrender value in favor of the daughters, as against the rights of the estranged wife as a judgment creditor of the insured. The rights of creditors of the daughters were not at issue and were never mentioned. In *Dinnerstein v. Schafler*, 34 Misc.2d 429, 225 N.Y.S.2d 986 (Sup.Ct.N.Y. County 1962), a creditor of the insured/policyholder was not permitted to attach the cash value of a policy on which the wife was beneficiary even though the husband had assigned that value to a bank as collateral security on a loan. And the holding in the case of *Males v. New York Life Insurance Company*, 367 N.Y.S.2d 575, 578, 48 A.D.2d 50 (1975)—that "an insurance policy with a named beneficiary is deemed to be exempt property in a bankruptcy proceeding"—was rendered in the context of the husband/policyholder's bankruptcy proceeding, and there was no mention of any rights of creditors of the spouse/beneficiary.

These cases, then, seem conclusively to establish that when § 3212(a) of the Insurance Law includes cash surrender value in the definition of "proceeds and avails," it was the Legislature's intent that subsection (b)(1) and the first sentence of (b)(2) vest the right to cash surrender value in the beneficiary as against creditors of the insured, regardless of whatever else the policy might say (because of § 3212(b)(5)), and indeed regardless of whether the right to cash surrender value has been assigned to a third party as collateral security for a debt (as was the issue in the *Dinnerstein* case).

*Polanowski*, thus clearly answers one question that the *Mata* decision did not reach. This writer agrees that the bankruptcy estate of the policyholder/insured is not entitled to the cash surrender value of the policy because the right to cash surrender value belongs to the beneficiary.

**12.** See *Guardian Trust Co. v. Straus*, 139 A.D. 884, 123 N.Y.S. 852 (1910) *aff'd*, 201 N.Y. 546, 95 N.E. 1129 (1911).

**13.** Somewhat similar variations on the statute had existed since 1840 as part of the New York Domestic Relations Law, but key language was quite different: It spoke of a wife "causing" a policy to be taken out on her husband's life.

§ 3212(b)(5), the pre–1927 statute expressly permitted, rather than prohibited, the compelling of the exercise of the power to obtain the cash surrender value.)

Hence, the reasoning utilized in the *Greenberg* case,—that "[t]he beneficiary of a life insurance policy, who may at any time be removed from the benefitted position by the insured and against the beneficiary's will, cannot have a vested interest"—and which led to the result *that the bankruptcy trustee of the husband/policyholder/insured was entitled to the cash surrender value,* was superceded by statute. *Greenberg* at 259.

The *Greenberg* case can have no vitality since March 31, 1927, when the beneficiary was indeed given very substantial rights against the insured's creditors, by statute. To ask whether the beneficiary's own creditors might have rights as a consequence of that legislative gift is a question that could not have been asked at the time of *Greenberg;* consequently, *Greenberg* can give us no answer.

The other case cited in *Polanowski* for the proposition that "the bankruptcy estate of the beneficiary lacks a sufficient interest to allow for administration by a Chapter 7 Trustee" is *Dellefield v. Block,* 40 F.Supp. 616 (S.D.N.Y.1941). The *Dellefield* court stated that "the separate estates of insured and beneficiary, created at the outset of the contracts of insurance and fundamentally different in their natures, cannot be considered as merging by the mere circumstance of the entry of a joint judgment." *Dellefield* at 617. That was the reasoning by which it was found that the exemption rights of the "insured" *qua* "insured" were not lost by the fact that the insured and the beneficiary both were liable on the debt. As to the beneficiary's own rights, the *Dellefield* court turned to a different theory and a different case. It examined *Chatham Phenix National Bank and Trust Co. v. Crosney,* 251 N.Y. 189, 167 N.E. 217 (1929). In that case a judicial construct was used "in order to bring the case within the terms of the statute." That was the fiction that "the husband would be deemed to be acting as agent for the wife in creating the insurance." *Dellefield* at 617 (discussing *Chatham* ). The *Dellefield* court stated "[i]t is true that by its precise terms the present case is not provided for, but for the same cogent reasons that have motivated earlier decisions I have concluded that the statute applies to the case at bar." *Id.* To my view, the *Dellefield* court adopted the judicial construct that this writer has posited *ought not* be grossly extended to a joint bankruptcy case involving reciprocal policies. This Court ought not to "ignore the agreed facts so as to achieve a 'double-deeming' of reciprocal agency, so as to prejudice the creditors of both spouses in a joint bankruptcy case." *Mata* at 581.

It is respectfully submitted that if *Polanowski* is correct in its result—that a beneficiary's bankruptcy trustee cannot reach what the beneficiary herself could reach—the reasoning must lie somewhere other than on the authorities cited therein.[14]

## PRE–1978 CODE CASES ARE "OLD BAGGAGE"

"Practitioners of the law in New York State have long assumed the exempt status of insurance policies such as those which are presently in dispute." *Polanowski* at 91. But we must question whether that assumption has been well-founded in

14. Of course, exactly what a beneficiary can reach is not clear for all cases, as discussed later.

recent years. In 1992 and 1993, respectively, the Hon. Howard Schwartzberg, U.S. Bankruptcy Judge (now deceased) in the case of *In re Rundlett,* 142 B.R. 649 (Bankr.S.D.N.Y.) and U.S. District Judge Goettel of that District (in review, at *In re Rundlett,* 153 B.R. 126), made clear that the assumption was false. Affirming the Bankruptcy Court, the District Court stated "Judge Schwartzberg found that the New York statute which exempted life insurance proceeds *only applied to the creditors of a spouse-beneficiary if the spouse also held title to the policy." Id* at 128. [Emphasis added.]

New York practitioners should not have remained sanguine about their long-standing assumption that life insurance policies are always exempt in bankruptcy, given those published holdings. The assumption had become myth.

Common sense might have belied the old assumption. The days when working families in America struggled to pay premiums on whole life policies because "term life" did not exist or was not available to them (they often worked, if at all, at hazardous jobs) are largely gone or are not relevant to a discussion about "credit." [15] And it need not be labored that within the world of those who can afford whole life policies today, whole life policies eventually have no "insurance value." Once the cash surrender value exceeds the face value, the life insurance policy is simply another "investment." Many forms of investments are exempt—e.g., 401K's and pension funds—but many are not, such as savings accounts (in excess of $2500, under New York law applicable to those who claim no homestead exemption), an ordinary stock portfolio, or some deferred compensation or profit-sharing plans. The "insurance value" of a life insurance policy diminishes as the cash surrender value of the policy approaches the death benefit value. And, as to unnecessarily large death benefit values, or as to a cash surrender value that (though far less than death benefit value) is nonetheless also larger than any beneficiary actually needs, the statutory purpose of the exemption—to enable surviving spouses and dependents to keep body and soul together after the death of the insured—might well be irrelevant. A spendthrift trust may be named beneficiary, if future waste is feared.

On the other hand, some people got bad advice from an insurance agent, or had no access to term life. They bought whole life policies with genuine "insurance value" in reciprocal policies and a genuine need for such value, which is to say that those people had no other meaningful assets. Section 3212(b)(5) would seem to prevent an involuntary surrender of the policy that might be irreplaceable by reason of the insured's increased years or of change in physical condition since the policy was issued. But is the *loan value* exempt? As discussed above, some states' statutes clearly say "no." Surrender of the policy might be a tragedy in a particular case. But whether even *that* would be sufficient to justify an exemption for all interests in all life insurance policies regardless of value is a legislative decision.

The New York state legislature has limited the exemptibility of such things as pensions and personal injury recoveries to an amount "reasonably necessary" for the

---

**15.** Many of the vast numbers of Americans who cannot afford to provide insurance protection for their families are not likely to have "credit." Many can afford insurance only by struggling. But term-life coverage is now available to far more Americans through employers, veterans' organizations, unions, fraternal groups, or by virtue of having a credit card, a mailbox at which to receive direct solicitations, or even by virtue of watching the right T.V. commercial or reading the right ad on a subway car.

support of the debtor and his or her dependents as did the federal exemptions and many states' exemptions. Whether New York would exempt a $10,000 death benefit, as opposed to a $ 5,000,000 death benefit is not for this Court's speculation, and the same is true as to "loan value." *Polanowski* and *Hickson,* however, jump to the generous conclusion that not only the value, but the ownership, is of no consequence.

Old baggage led to the myth. And some of it had merit at one time. In a detailed and profoundly instructive recitation of the history of this insurance exemption up through 1929, the New York Court of Appeals, in the *Chatham Phenix National Bank and Trust Co. v. Crosney* case cited above, explained why "deeming" the husband to be the wife's "agent" used to be important to the statutory purpose of making sure that a married woman (who had been under a disability to contract in her own name or to hold or dispose of separate property, and who, prior to 1840, was thought not even to have an insurable interest in her husband's life) was not left destitute by her husband's creditors. The Court of Appeals is the highest court of the State. Nothing in the *Chatham Phenix* case might have caused that high court to consider what might happen if the wife also had debts. She probably had none because she probably could not get credit in 1929, except as a co-signer for her husband. That court said:

There is no reasonable basis here for a construction which would create distinctions between policies where the contract of insurance is made by the insurance company with the beneficiary, and policies where the contract is made with the person whose life is insured, or between policies where the beneficiary is a stranger to the person whose life is insured and policies where the beneficiary is his wife. The Legislature was dealing primarily with the conflicting rights, on the one hand, of creditors or personal representatives of a person, whose life is insured; and, on the other hand, of a beneficiary of the policy, to an insurance fund created by the appropriation of moneys of the insured for the payment of premiums. Within the meaning of the statute, in all cases insurance is "effected" by the person whose life is insured, upon the appropriation and investment by him of his moneys in the premiums which create the insurance fund. Other construction would defeat rather than effectuate the legislative intent and create distinctions without any logical basis.

*Id* at 197, 167 N.E. 217.

Context is everything, in understanding that holding. That case was an action by a creditor of the deceased insured against the deceased's surviving wife, based upon a section of the New York Domestic Relations Law that, at that time, permitted a husband to pay no more than $500 per year in premiums on an insurance policy for the benefit of his wife. He had paid amounts "greatly in excess of $500" and the creditor pursued its statutory right to the portion of the insurance monies that had been purchased by means of premium payments in excess of $500. The New York Court of Appeals was construing what was then the newly-enacted exemption in the New York Insurance Law that contained no such limitation and that provided an exemption as against the creditors of the person who "effects" a policy of insurance on another person. That was the forerunner of the first sentence of what is now § 3212(b)(2). The Court of Appeals constructed a way to make that new statute applicable by "deeming" the surviving spouse to have "effected" the policy that in fact her husband had taken out on his own life. It thereby relieved

her of the $500 limitation contained in the Domestic Relations Law.[16]

Again, that court said nothing about what rights her own creditors (if there were any) would have had with regard to those insurance proceeds. That matter was not before the court, and the predecessor of the second sentence of § 3212(b)(2) had not yet been enacted. (It was enacted in 1939, ten years after the case.)

The sole case cited in *Polanowski* that dealt with whether cash proceeds of a policy insuring the husband were exempt as against creditors of the wife, was the *Dellefield* case which (as explained above) expressly extrapolated from *Chatham* the reasoning quoted above, even though *Chatham* was inapposite.

Again, context is critical. In the *Dellefield* case the judgment creditor had already had the U.S. Marshal take from the insured's wife her silver fox jacket, her sable scarf, her mink coat, her ermine coat, her late-model Buick sedan, her Longine wrist watch and band, and her Elgin pocket watch and chain. So be it for the obvious luxury items. The court became involved when the creditor sought to take one table, eight chairs, all knives, forks, spoons, and butter spreaders, all chinaware and crockery, and all linens. The court found those exempt. One must note that the husband-insured had borrowed against the insurance policies to their maximum loan value, and that there was no equity in them: *They had no value unless the couple could someday pay down the loans.* With the obvious luxuries gone and the obviously exempt necessities exempted, the District Court was asked to turn to the seemingly non-exempt policies that

were valueless. Clearly looking for a basis upon which to prevent zeal from becoming punishment (remember, it was not her own debt in the initiation), the court concluded that the reasoning of *Chatham* should apply and the husband be deemed to have acted as agent for his wife.

Taken in isolation, this writer has no dispute with that court's conclusion. Though the *Chatham* case had nothing to do with the matter presented in *Dellefield*, if this writer been deciding whether a woman could keep her interest in valueless life insurance that might be worth something someday, after it had come down to that and to pots, pans and butter spreaders after every accouterment of "wealth" was gone to pay *her husband's* creditor (on a debt which she had merely co-signed), in 1929, I might have reached the same result.

That was three quarters of a century ago, and many statutory changes ago.

## MATA PRESENTED A NEW ISSUE IN NEW YORK

*Mata* was the first time, in the published cases, in which reciprocal policies that were not "saved" by the second sentence of Insurance Law § 3212(b)(2) or its predecessors were presented in a joint bankruptcy case of both husband and wife in New York. (Joint cases were not allowed under the 1898 Bankruptcy Act, although substantive consolidation was permissible.)

Whatever any court has ever said about the choateness or inchoateness of a beneficiary's interest in a life insurance policy loan value or surrender value does not compel a particular result in such a joint

---

**16.** It seems that the old statute acted like this: If the husband paid $700 per year (for example) and ended up with a policy worth, say, $40,000, when a $500/year payment would

have yielded a policy worth only $35,000 as of the same date, then the $5,000 could be attached by the creditor.

bankruptcy case.[17] No published New York case prior to *Mata* has been found discussing whether the bankruptcy trustee in the case of husband and wife could do what the husband and wife (or, for that matter, what two trustees in separate cases of husband and wife) together could readily do regardless of what the rights of their respective creditors might be—agree to turn the policy into cash, at least as to the loan value (so as not to leave the two destitute as to an insured who has become uninsurable).

As noted above, a policy with loan value or cash surrender value in excess of the death benefit is not "insurance" but is merely an investment. As to that circumstance, and as to many other circumstances in which the cash surrender value is less than, but close to, the death benefit, or where the cash surrender value is extremely large, the cash in that policy is no different (qualitatively) than a million-dollar Stradivari-crafted violin sitting in a safe-deposit box with its owners, husband and wife, each holding one of two necessary keys to the box; and then the couple filing joint bankruptcy to get rid of their debts and arguing to their creditors and the bankruptcy court that neither one alone has a "choate" or attachable right to the Stradivarius, but only a "mere expectancy" that the other will co-operate when needed.

If the face value of a life insurance policy were $1 million, and its cash value $2 million, neither the salutary purposes of this exemption nor its history, nor archaic cases that never dealt with the issue, would compel or combine to give the debtors the benefit of a "double-deeming" of reciprocal agency at the expense of creditors of both debtors. Nor would history or rules of construction support rejection of the clear statutory language.

## THE 1978 CODE DIVERGED FROM PRIOR LAW

■ Joint cases were not possible before October 1, 1979. Also, the 1978 Code rendered academic the notions of choateness and leviability that were key to § 70 of the 1898 Act. One who files a petition under the 1978 Code assigns all of her rights to any valuable property to her trustee for the benefit of her own creditors, whether a creditor could have reached them without her assistance or not. And as to an insurance policy, § 3212 provides an exception to that simple truth *only* for a beneficiary who is also the policyholder—§ 3212(b)(2), second sentence. The result may be a trap, but only for the unwary. Capable counsel should restructure her client's holdings before filing the client's bankruptcy, as Congress has clearly permitted.[18] An assignment of ownership suffices, according to *In re*

17. See *In re Rundlett*, 153 B.R. 126, 131 (S.D.N.Y.1993) where the District Court stated: "The surrender value of [a] policy is exempted from the creditors of a spouse beneficiary who has not effected the policy, *not through operation of the statute,* but because such a beneficiary does not have an interest in the policy's surrender value capable of attachment." [Emphasis added.] That was dictum. That case did not involve the bankruptcy of the beneficiary or any claims by her own creditors. But it is important to note the emphasized language—§ 3212 did not help the beneficiary against her own creditors, because she did not "effect" the policy.

18. "As under current law, the debtor will be permitted to convert non exempt property into exempt property before filing a bankruptcy petition.... The practice is not fraudulent as to creditors, and permits the debtor to make full use of the exemptions to which he is entitled under the law." (H.Rept. No. 95–595 to accompany H.R.8200, 95th Congress, 1st Sess. (1977) pp. 360–363.)

*Rundlett*, 142 B.R. 649.[19]

And § 3212(e)(1) states that "Every assignment or change of beneficiary or other transfer is valid, except in cases of transfer with actual intent to hinder, delay or defraud creditors...."

Early in the era of the 1978 Code the enormous differences between that Code and the Old Act were emphasized. Bankruptcy Judge Clive Bare stated, "[t]he filing of a bankruptcy petition [under the 1978 Code] creates an estate which consists of 'all legal or equitable interests of the debtor in property....' 11 U.S.C. § 541. § 70 of the former Bankruptcy Act was *more restrictive*[;] specifically,

§ 70(a)(5) provided that the trustee was vested by operation of law with the title of the bankrupt in 'property ... which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded or sequestered....' " *In re Iler*, 18 B.R. 855, 856 (Bankr. E.D.Tenn.1982). (Internal citations omitted) [Emphasis added.]

And the Second Circuit ruled, "[t]he existence of a legal or equitable interest may often turn on non-bankruptcy law, but once it is determined that such an interest

**19.** There Judge Schwartzberg examined an earlier case that relied on the *Chatham* cases' "deeming" of the husband as agent. That was the case of *Kaufman v. New York Life Insurance Co.*, 32 A.D.2d 79, 299 N.Y.S.2d 269. There the husband, who had effected the policies on his own life, later assigned them to his wife/beneficiary. But the court in the *Kaufman* case said "prior to transfer [of the policies by assignment] the [cash surrender value] of the policies as to which [the wife] was the beneficiary would be exempt from creditors of both [the husband and wife].... But for the assignment of such policies, the proceeds thereof clearly would have been exempt from attachment as to the debtor [wife] since she would only have had the interest of a beneficiary." *Id* at 81, 299 N.Y.S.2d 269.

Judge Schwartzberg ruled that

[T]he *Kaufman* case continues to reflect the law in New York that when a husband assigns a life insurance policy on his life to his wife, he is deemed to have acted as her agent so that she should be regarded as having caused or effected the policy, with the result that the proceeds, including the cash surrender value, are exempt from the wife's creditors.

...

As to the two policies in the husband's name which were never assigned to the debtor, *there is no affirmative act asserted to reflect that the husband acted as the debtor's agent* for purposes of concluding that the debtor "effected" the policies in her husband's name. The proceeds from *these* two

policies aggregating $ 2,011,889.44, *are not exempt from the beneficiary wife's creditors* under New York Insurance Law § 3212(b). Where a husband takes out insurance on his own life and names his wife as beneficiary, but does not assign the policy to her, the proceeds are exempt from the husband's creditors, *but they are not exempt from the wife's creditors, even if the policy was taken out at the instigation of his wife.* *Ruindle* 654. [Emphasis added.]

For this last proposition, Judge Schwartzberg cited the case of *In re Bifulci*, 154 F.Supp. 629, 631 (S.D.N.Y.1957). That case also involved the bankruptcy of a beneficiary of a husband who was deceased.

But the dictum in the *Kaufman* case to the effect that before the insured dies, the beneficiary does not have an interest in cash surrender value that could be attached by her creditor need give us little pause after the enactment of the Bankruptcy Reform Act of 1978. Whether the right to cash out the policy was in the husband or in the wife, the bankruptcy of whoever has such right works as an assignment of that right, by operation of law, to the bankruptcy trustee. It is because of the transfer by operation of law that this result does not violate § 3212(b)(5) which states that "no person shall be compelled to exercise any rights, powers, options or privileges under such policy." The debtor's cooperation is not needed, and need not be compelled; the debtor is not necessary at all. The trustee stands in her shoes, as noted earlier in this decision.

exists, it becomes part of the debtor's estate by operation of law under § 541 of the new Bankruptcy Code." *In re Regan v. Ross*, 691 F.2d 81, 84 (2nd Cir.1982).

Voluntary bankruptcy under the 1978 Bankruptcy Code transfers even more to a trustee than the operative provision of the 1898 Bankruptcy Act transferred to a trustee. And under that prior Act it was axiomatic that bankruptcy works an "assignment by operation of law." Consequently, it is fair to say that for present purposes a debtor's filing of a petition under Title 11 is even more of a transfer than an assignment of any rights she has in any insurance policy, *except to the extent that a specific exemption exists therefor.*

Because of the first sentence of § 3212(b)(1), the owner/insured's "assignment by operation of law" cannot defeat a mere beneficiary's claim to "proceeds and avails" as against the spouse's creditors. But there is no protection anywhere for the beneficiary as against the creditors of the beneficiary who assigns all rights under a policy that he or she does not own. It is only if he or she "effected the policy," *and* is the beneficiary, that he or she is protected from that "assignment by operation of law" by § 3212(b)(2), second sentence, as against the beneficiary's own creditors.

If a beneficiary has no "vested" interest in loan value or cash surrender value, the beneficiary nonetheless may convey her or his contingent right, or his or her expectancy, and so forth. She or he does that when filing a bankruptcy petition, and it is only when some statute permits that interest thereafter to be allowed "back" to a debtor that it is exempt.

### IN SUM, UNDER THE 1978 CODE

At the end of it all, this is a § 541 matter, not a § 544 matter. The trustee stands in the Debtor's own shoes by operation of law. Any limitations on what a creditor could do as to the policy outside bankruptcy is irrelevant. The power of a trustee to do with non-exempt property what a debtor herself could have done cannot be disputed.

As to the interest of the insured/owner of a policy in a joint bankruptcy case under the 1978 Code, § 3212(b)(1) of the Insurance Law makes it clear that even if the insured/owner reserved the right to change beneficiary or to cash the policy in, the bankruptcy trustee of the insured/owner may not do so for the benefit of the creditors of the owner/insured. But other than when the beneficiary also "effected" the policy, the statute is silent as to letting the policy pay for the means to support the beneficiary—to pay the beneficiary's creditors. Outside bankruptcy the husband and wife may agree to do this as they wish. And § 3212 says nothing that would prevent the bankruptcy trustee of the owner/insured and the bankruptcy trustee of the beneficiary from agreeing to do what the two debtors could do. Nothing in the statute would protect the cash surrender value from creditors of the beneficiary. In terms of the hypothetical posed earlier, the trustee may agree with himself or herself as trustee in two different estates to retrieve the million-dollar Stradivarius from the safe-deposit box. (Perhaps the trustees in successive individual cases could do the same thing.)

The "intellectual baggage" associated with this issue is old baggage that never focused on the effect of the bankruptcy of the non-owner beneficiary rather than owner/insured. This writer disagrees with some dictum in the *Rundlett* case decided in 1992 by Judge Schwartzberg, but the *Rundlett* case should have been a "wake-

up call" to practitioners. It clearly declared that in the bankruptcy of the beneficiary, § 3212 has clear language that flies in the face of the myth.

·*Mata* was the first time in a published case that § 3212 and the old baggage converged in a joint bankruptcy case in which each debtor was an owner/insured on one policy and the beneficiary on the other policy. The 1978 Reform Act dramatically changed the law of what became "property of the estate" as to reciprocal insurance policies, and for the first time they were presented in a "joint" case of the husband and wife. It became necessary for the old baggage to be discarded.

### THE RESULT

█ When the two parties who have the power to agree to borrow against or to cash in a policy for their own benefit are in bankruptcy together, the trustee or trustees may, under 11 U.S.C. § 541, do the same thing that the parties may do unless an exemption says otherwise. The trustees may do so only for the benefit of the estate of the beneficiary, however, except when the second sentence of § 3212(b)(2) says that a bankruptcy trustee may not do so at all. This result may or may not be what the New York Legislature intended, but it is what it said, and that is what must prevail in this court.

What might the result be if the husband and wife do not file jointly, but rather go through bankruptcy separately, one after the other? That issue must await a proper case. It is possible that it will yield a result that is not congruous with the result in the present case. But that possibility is no reason to ignore the statute in the present case. Elsewhere in exemption law in this state there are seeming anomalies that are not permitted to undercut other unambiguous rules. For example, New York provides a $10,000 exemption for a debtor's homestead; $20,000 in the joint case of husband and wife. It is sometimes asked: If six friends co-own a house that has $60,000 in equity and are all liable for a "slip and fall" that occurred there, has it become a $60,000 exemption as against the victim if each of the six friends passes *seriatim* through chapter 7?[20] Indeed, in the absence of clear authority to force all six co-owners into bankruptcy at one time and compel them each to claim the same $10,000 exempt, the fact that the equity is deemed to be split into six separate equity amounts for bankruptcy purposes has the effect of leaving the slip and fall victim without a remedy that would be available against property that is more "conventionally" owned, which is to say owned by one or two people, leaving $40,000 or $50,000 non-exempt. Any perceived problem with the six-owners-in-bankruptcy result is not a reason to tinker with how the statute works in any individual case, or how it works in the joint case of owners who are

---

**20.** Another example is presented by the "Capital Gains Exclusion" question. In some instances the trustee was authorized to exercise the exclusion. *See In re Kerr*, 237 B.R. 488 (W.D.Wash.1999); *In re Popa*, 218 B.R. 420 (Bankr.N.D.Ill.1998), *aff'd* 238 B.R. 395 (N.D.Ill.1999). Contrast those cases with this Court's decision in *In re Dixon*, 140 B.R. 945 (Bankr.W.D.N.Y.1992). In *Dixon* joint title to the property was held and the co-owner was not a debtor. This Court stated "[there] has not been cited ... any provision of Bankruptcy Law or Tax Law by which the trustee or this Court could compel [a non-debtor] to join in the election or by which it could be exercised on her behalf." *Id.* at 947. Another illustration is "leapfrog filing"—foreclosure can be thwarted longer by separate filings by the husband and wife, in leapfrog style; but in a joint case, a lift of stay is effective against both. Such anomalies are statutory "glitches" that do not warrant a court's "leapfrogging" over the clear language of a statute to reach a result it thinks a legislature might select if it were to resolve the glitch.

husband and wife. Similarly, if it turns out that spouses who file separately get to keep loan value that they would lose in a joint filing, that is not a reason to ignore how the statute operates in a joint case.

But as significantly, it appears to this writer (without ruling thereupon) that the result might not be terribly different in *seriatim* individual filing so long as the respective ownership of the policies is not changed between the filings.[21] The rights of a beneficiary are not insubstantial, and, generally, they are assignable. Under some circumstances seemingly yet to be encountered in the case law in this state, it might be possible for a beneficiary (and therefore the beneficiary's bankruptcy trustee) to compel the non-debtor spouse to pay over the debtor spouse's equitable share of the value of the policy, just as is done in the event of divorce,[22] and somewhat similar to what the trustee may do under 11 U.S.C. § 363(h–k) as to property co-owned with a non-debtor.

In incorporating § 3212 as a bankruptcy exemption, § 282 of the Debtor and Creditor Law employs unusual language: "[A]n individual debtor domiciled in the state may exempt from the property of the estate . . . only (i) personal and real property exempt from application to the satisfaction of money judgments under sections fifty-two hundred five and fifty-two hundred six of the civil practice law and rules, (ii) insurance policies and annuity contracts and the proceeds and avails thereof *as provided in* section three thousand two hundred twelve of the insurance law and (iii) the following property. . . ." N.Y.Debt. & Cred.Law § 282 (McKinney 2001).

To this writer it appears that the legislature, in enacting § 282 as part of the 1982 "opt-out" legislation, understood that if a voluntary assignment of beneficial rights under a policy can be a good thing (for example, to secure a loan necessary for medical care or education of the beneficiary or a dependent of the beneficiary), a lawmaker must be careful to permit such a favorable result outside bankruptcy, while treating differently, and expressly, the "voluntary assignment" that is accomplished by a bankruptcy filing. In other words, if a legislature wishes to permit voluntary alienation outside bankruptcy, but to maintain an "exemption" in bankruptcy, one must specifically mention "bankruptcy" in the legislation. Section 3212(b) does this with clarity, and does so only as to the insured/owner, and as to the beneficiary/owner.

If an owner of a policy fears irresponsible conduct by a beneficiary in such regards, the owner may instead address the matter in a "spendthrift trust." A beneficiary's interest in a spendthrift trust is clearly exempt in the beneficiary's bankruptcy case. (See 11 U.S.C. § 541(c)(2)).

But as to an insurance policy, suggestions that a mere beneficiary has no "vested interest" in, for example, the cash surrender value or loan value of the policy, can be overstated. Thus it has been said that "[i]n an ordinary life insurance policy which is made payable to a beneficiary and does not authorize a change of beneficiary, *the named beneficiary has an absolute, vested interest in the policy* from the date of its issuance, delivery, and acceptance, of which he cannot be divested without his consent. In such a case, an *irrevocable*

---

**21.** Such a change in ownership might well constitute inequitable conduct that would taint the claim of exemption in the second case.

**22.** See *In re Ryman,* 172 Ill.App.3d 599, 122 Ill.Dec. 646, 527 N.E.2d 18 (1988); *Leveck v. Leveck,* 614 S.W.2d 710 (Ky.Ct.App.1981); and *Grost v. Grost,* 561 S.W.2d 223 (Tex.Civ. App.1977).

*trust* has been said to be created. The foregoing general rule applies even to a policy to which there are attached the incidents of a loan value, cash surrender value, and automatic extensions by premiums paid, .... " 44 Am.Jur.2d, *Insurance,* § 1711 [case authorities omitted] (1982).[23]

"[The] interest of a beneficiary in a life insurance policy cannot be terminated by the insured without the consent of the beneficiary except in pursuance of a right in the insurance contract itself, the insured, in the absence of a reservation of the power to revoke or change the designation of beneficiary or to modify or surrender the contract, cannot cancel or surrender the policy so as to defeat the rights of the beneficiary. Thus the insured cannot, except in pursuance of a power derived from the insurance contract itself, surrender the policy to the insurer for the purpose of obtaining the cash surrender or loan value of the policy without the consent of the beneficiary." 68A NYJur.2d, *Insurance* § 926 [case authorities omitted] (1998).

Cases have yet to explore the extent to which a spouse/beneficiary[24] with such vested rights has the power to compel the owner/insured to take steps for his wellbeing, such as to borrow against the policy or to cash it in. Hence, there has been no exploration of the extent to which his bankruptcy trustee could do so, as his assignee for the benefit of his creditors.

Until cases explore the question, we cannot determine whether, for example, the taking out of reciprocal insurance policies might be viewed the way the execution of reciprocal wills was viewed in the state of New York prior to 1983. In *Glass v. Battista,* 43 N.Y.2d 620, 403 N.Y.S.2d 204, 374 N.E.2d 116 (1978) the highest court of the State of New York noted "It is established in this State that two persons may validly agree to dispose of their estates in a particular manner, and that such an agreement may find expression in a joint or mutual will. Similarly beyond dispute is the principle that once a party to such a will has accepted the benefits granted him under that instrument, he, too, must adhere to its terms, or equity would be illserved if, after one party had honored the agreement, the other party, having reaped its fruit, were at liberty to uproot it." *Id.* at 623, 403 N.Y.S.2d 204, 374 N.E.2d 116. (Internal citations omitted).

This result was changed in 1983 by the enactment of the New York Estate's Powers and Trusts Law § 13–2.1(b) which provided that a contract to make a joint will could be established only by " 'an express statement in the will that the instrument is a joint will and the provisions thereof are intended to constitute a contract between the parties.' " See *In re Estate of Lubins,* 172 Misc.2d 517, 656 N.Y.S.2d 851 (Sur.Ct. 1997) for a discussion of this change in the law.

Given such precedent, it cannot be certain that where a husband and wife have taken out reciprocal insurance policies, the beneficiary as to one would have no right to obtain the value of that policy from the other to assist the beneficiary in meeting whatever obligations or needs were contemplated in the parties' contract. If both

**23.** The "irrevocable trust" is not a "spendthrift trust." It protects the beneficiary from the policyholder, and not from herself or her own needs or creditors.

**24.** In theory, it might not matter whether the beneficiary is a spouse, or a child, or a business associate. But because courts have fully explored this matter in the context of matrimonial law, the possibility that a beneficiary might be viewed to have a present, equitable right to, say, the loan value of a policy owned by another is easiest to see in the case of husband and wife.

husband and wife are obligated on a debt, and the creditor is seeking collection only from the policy beneficiary on one of the policies (because § 3212(b)(1) clearly exempts the policy as against the creditors of the insured/owner), it is by no means certain that the beneficiary could not compel her husband to contribute to his responsibility on that obligation and could not compel that he obtain the resources to do so, if necessary, by borrowing and/or cashing out the policy. (To suggest that no man or woman would choose to do this—to seek to have his or her creditors paid—is too cynical to be worthy of discussion.) If she could do so, then no statute says that her bankruptcy trustee (who does not need to "compel" her cooperation) could not do so.

Further, if reciprocal life insurance policies were taken out as a "contract" between husband and wife to provide a mechanism for one another's support, it might be hollow to argue that the beneficiary could be left to starve for want of the cooperation of the insured/owner in obtaining the loan value of the policy to meet the beneficiary's needs even if the owner/insured is not obliged on the beneficiary's debts. If the beneficiary could sue on such a contract, then the beneficiary's bankruptcy trustee could do so as well.

The myth has prevented exploration of these and other implications of reciprocal policies.

### CONCLUSION

The myth provides a clear, but overbroad "rule." The fact is that the statute is clear, though it may be flawed in its effort to deal with an exceptionally complex and subtly-nuanced body of exemption law. The Trustee's objection to the claim of exemption in the cash surrender value of the two reciprocal policies here is sustained. He may cash each in for the benefit of the creditors of the beneficiaries

of each. He is directed first to seek a stipulation with the Jacobses by which they may preserve the policies but pay to their bankruptcy estates the value thereof.

SO ORDERED